**EXHIBIT "A"**

# PLEDGE PROMISSORY NOTE

$5,000,000.00 April 15, 2019

**FOR VALUE RECEIVED**, the undersigned, **L N HOSPITALITY CLEVELAND LLC**, an Ohio limited liability company, and **L N PARKING CLEVELAND LLC,** an Ohio limited liability company (collectively, "Maker"), jointly and severally promise to pay to the order of **ACCESS POINT FINANCIAL, INC.**, a Delaware corporation, its successors or assigns ("Lender"), the principal sum of FIVE MILLION, AND NO/100 DOLLARS (U.S. $5,000,000.00), or so much thereof as may be funded, together with interest on the unpaid principal balance outstanding from the date hereof through the Maturity Date at the Note Rate (as defined below). Interest shall be computed on the outstanding daily balance of the Note on the basis of a 360 day year for the actual number of days elapsed in the period for which interest is payable. Principal and interest accrued thereon, together with all other sums which may be at any time due, owing or required to be paid by the terms of the Security Instruments (hereinafter defined) and other Loan Documents (as defined in the Security Instruments) are hereinafter collectively called the "Indebtedness" or "Loan".

The interest rate will be a fluctuating rate of interest equal to the greater of the 30-day LIBOR rate, or an equivalent rate as determined by Lender (hereinafter defined as "Index"), plus 1100 basis points (11.00%) per annum, provided that in no event shall the Index be less than two hundred basis points (2.00%). This equates to a minimum interest rate of 13% per annum (the "Note Rate"). The initial Note Rate shall be "set" as of the date of Lender's first interim advance of the Loan, based on the one month Telerate LIBOR as published by Bloomberg on such date. Each calendar month thereafter, the LIBOR will be set three Business Days (Business Days shall mean any day [other than a Saturday or Sunday] on which commercial banks are open for business in New York, New York) prior to the 1st day of each calendar month. In all cases the LIBOR rate should be rounded up to the nearest 1/100%. The rate will float throughout the entire life of the Loan.

## I.    <u>Payment Terms</u>.

Principal and interest on this Note shall be paid in the following manner:

A.    Interest only shall be payable monthly, in arrears, during the term of the Loan commencing on the first (1st) day of May, 2019, and continuing on the first (1st) day of each month thereafter until April 1, 2020 (the "Amortization Commencement Date").

B.    Commencing on the Amortization Commencement Date, and continuing on the first (1st) day of each month thereafter during the term of the Loan, monthly payments of principal and interest shall be payable in an amount equal to the monthly constant mortgage payment that would fully amortize the outstanding principal balance of the Loan on the first (1st)

day of the calendar month preceding the Amortization Commencement Date at the Note Rate over a period of seventy-two (72) months. Such monthly payment shall be applied first to accrued interest and the balance to principal.

**C.** The entire remaining outstanding principal hereof, together with all accrued but unpaid interest thereon, shall be due and payable in full on March 1, 2025 (the "Maturity Date"), provided, however, if the Mortgage Loan (as defined below) is not refinanced prior to February 7, 2023 on terms and conditions acceptable to Lender in its sole discretion, the Maturity Date shall be changed to February 7, 2023.

**D.** All required payments are to be made no later than 2:00 p.m. (Atlanta time) on the date when due (the "Regular Payment Date") in immediately available funds in lawful money of the United States of America which is legal tender for public and private debts, by ACH automatic debit.

**E.** The outstanding amount of the Loan fundings as reflected on Lender's records from time to time shall be presumed to be correct and binding on the Maker (absent manifest error) unless within thirty (30) domestic business days after receipt by Maker of any notice from Lender of such outstanding amount, Maker notifies Lender to the contrary.

**F.** Whenever any payment to be made hereunder shall be stated to be due on a day other than a domestic business day, such payment shall be made on the next succeeding domestic business day, and such extension of time shall in such case be included in the computation of payment of interest.

## II.    Use of Loan Proceeds/Advance Process

**A.** The Loan shall be used by Maker solely for the purposes of (a) purchasing that certain 6 acre tract comprising the southerly portion of Assessor's Parcel Number 986-034-014 in Dublin, Alameda, California (the "Purchased Property"), and (b) paying third-party expenses related to the development of the Purchased Property. The Loan proceeds shall be funded, at the time of closing, into a reserve account held by the loan servicer and shall permit advances to be made for a period of 180 days after the date of this Note (the "Drawdown Period").

**B.** Maker shall submit written application for advances of the Loan ("Advance Request(s)") to Lender which shall identify in reasonable detail the costs to be paid with such advance and shall be accompanied by original invoices of the party claiming payment due and a Delivery and Acceptance Certificate unless waived by Lender. Advance Requests may be submitted not more than twice a month, unless otherwise agreed by Lender. Upon Lender's approval of the form and content of an Advance Request and confirmation that all conditions precedent to an advance have been satisfied, Lender will disburse or advance the amount requested directly to the applicable vendors unless otherwise agreed by Lender in its sole discretion. If Lender determines that the advance requested or any part thereof is not to be made, Lender will inform Maker of the reasons for not making any such advance. All advances shall be made by wire transfer to the party entitled to receive such payment as designated on the Delivery and Acceptance Certificate as Lender deems appropriate in each case. All payments to

parties other than Borrower shall be deemed made for the use and benefit of Borrower with the same force and effect as if disbursed or advanced directly to Borrower.

      **C.**    Each Advance Request submitted shall constitute a representation and certification by Maker to Lender that (i) the goods and/or services for which payment is requested were ordered and received by Maker; (ii) the goods and/or services have the value as stated in the Advance Request; and (iii) no event has occurred nor does any condition exist which, with the giving of notice where applicable or the expiration of applicable grace or cure periods, or both, would constitute an Event of Default.

## III.    Events of Default.

      **A.**    It shall constitute an event of default ("Event of Default") of and under this Promissory Note ("Note") if any of the following events shall occur:

      **1.**    Maker shall fail to pay any installment of interest or principal when due under this Note. However, monthly payments received by Lender within ten (10) days of the Regular Payment Date shall be considered made as required. If payment is not received by Lender by the fifth (5th) day of the month when due, the Default Rate shall apply from the first day of the month. In addition, the holder hereof may assess a late charge in the amount of five percent (5%) of the unpaid amount or the highest rate allowed by Applicable Law, whichever is less.

      **2.**    Maker shall fail to perform or observe any of the covenants, agreements or conditions of this Note, other than a failure to pay an installment of interest or principal when due hereunder, after a reasonable notice and opportunity to cure such default, not to exceed thirty (30) days is given to Maker, or an Event of Default shall occur under any of the other Loan Documents now or hereafter evidencing or securing the Indebtedness.

      **3.**    Maker shall fail to perform or observe any of the covenants, agreements or conditions of any other agreement between Maker and Lender, including without limitation that certain Equipment Loan and Security Agreement of even date herewith, and such failure is not cured within the applicable cure period.

      **4.**    Any guarantor of Maker's obligations hereunder shall fail to perform or observe any of the covenants, agreements or conditions of this Note, or of any other agreement executed by such guarantor or pledgor in connection therewith, including without limitation any Guaranty Agreement, and such failure is not corrected within any specified cure period.

      **5.**    The Property (as defined below) shall cease to be operated as a Sheraton branded hotel without Lender's prior written consent, which consent will not be unreasonably withheld as long as the Lender believes, in its sole discretion, that the quality of the replacement brand is equal or superior to Sheraton, or the Maker shall terminate, or fail to observe any of the material covenants, agreements or conditions of its current Sheraton franchise agreement or any renewal or replacement thereof, and such failure is not cured within the applicable cure period.

As used in this Note, the Property means the real property and improvements thereon located at 5300 Riverside Drive, Cleveland, Ohio 44135.

> **6.** Maker shall cease to be the sole owner of the Property.

> **7.** Maker shall encumber or otherwise grant to any third party a lien or other security interest (except purchase money security interests or liens in favor of Lender) on the Property, as well as any improvements thereon or personal property located thereat or affixed thereto, excluding, however, the liens and/or security interests created pursuant to those certain mortgage loan on the Property made by Simmons Bank to the Maker on December 20, 2016 in the original principal amount of $12,500,000 (the "Mortgage Loan").

> **8.** Maker shall fail to perform or observe any of the covenants, agreements, or conditions of the Mortgage Loan, and such failure is not cured within the applicable cure period.

> **B.** While any Event of Default exists, the Note Rate shall be increased to five percent (5%) per annum above the original Note Rate ("Default Rate"). The Default Rate shall accrue from the date of the Event of Default until the date upon which the Event of Default is cured. It is a condition precedent to the cure of any Event of Default that Maker shall pay all principal and accrued interest required under this Note (i.e. that would have been paid but for the Event of Default) to the most current Regular Payment Date, and the difference between the Default Rate and the Note Rate from the date of the first occurrence of the Event of Default to the date upon which the Event of Default is cured.

> **C.** Prior to an Event of Default, payments received by Lender shall be applied first to interest and the remainder to principal. After an Event of Default, Lender may, at its option, apply any payments or other amounts received first to the payment of Lender's expenses incurred in accordance with the provisions of the Loan Documents, then to interest, and the remainder to Principal.

> **D.** In case of an Event of Default by Maker in the performance or observance of any of the covenants, agreements or conditions of this Note or the other Loan Documents and the expiration of any applicable cure periods, Lender, at its option and without further notice, may declare the Indebtedness, including the entire principal balance, together with all interest accrued and unpaid thereon, to be immediately due and payable. Failure to exercise this option for a particular Event of Default shall not constitute a waiver of the right to exercise same in case of any subsequent Event of Default.

## IV. <u>Security</u>.

The indebtedness evidenced by this Note and the obligations created hereby are secured by, among other documents: (i) the Guaranty Agreement dated as of the date hereof (the "Guaranty") by Bharatbhai Patel (the "Guarantor"); (ii) the Pledge Agreement dated as of the date hereof (the "Pledge Agreement") by the Guarantor; and (iii) UCC Financing Statements

concerning the membership interests of Maker held by the Guarantor (collectively, the "Security Instruments"). Some of the Loan Documents are to be filed for record on or about the date hereof in the appropriate public records.

## V.     **Prepayment; Exit Fee**

(a)     The principal balance of this Note may be prepaid, in whole, but not in part, upon: (i) not less than ten (10) days prior written notice to Lender specifying the date on which prepayment is to be made (the "Prepayment Date"); (ii) payment of accrued interest to and including the Prepayment Date; or if Lender would incur costs and expenses as a result of the Prepayment Date not being the last day of the applicable interest period, to and including the last day of the applicable interest period in which the Prepayment Date occurs; (iii) payment to Lender of the Exit Fee (as defined in subsection V(b) below); and (iv) payment of all other sums then due under this Note and the other Loan Documents to the extent then payable.

(b)     When Maker pays the entire amount of the Indebtedness (whether on a Prepayment Date or the Maturity Date), Maker shall pay to Lender, in addition to other sums due under this Note from and after the date hereof through and including the Prepayment Date or Maturity Date, as applicable, a premium (the "Exit Fee") equal to one percent (1.0%) of the original stated principal amount of this Note. Maker explicitly acknowledges and agrees that the Exit Fee is justifiable and reasonable in order for Lender to receive the economic return it has bargained for and is entitled to in connection with its reservation of funds for the Loan.

## VI.     **Non-Usurious Loan.**

A.     It is the intention of Maker and Lender that this Note and all other Loan Documents shall comply with any Applicable Law. To that end, the parties stipulate and agree that none of the terms and provisions of this Note or the Loan Documents shall ever be construed to create a contract that violates any Applicable Law or exceeds the limits imposed or provided by law for the use or detention of money or for forbearance in seeking its collection.

B.     In the event that interest paid or received under this Note or the other Loan Documents shall result, because of any reduction of principal or any other reason, in an effective rate of interest which for any period is in excess of applicable usury limits, such excess interest for the period in question shall, at Lender's option, be refunded to Maker or be applied upon the outstanding principal of the Note.

C.     The term "Applicable Law", as such term is used in this Note shall mean any Federal or Georgia statute or other law, including, but not limited to, the applicable usury laws of the State of Georgia or the United States (whichever allows the greater rate of interest), as such Applicable Law now exists, is amended or is enacted during the term of this Note.

D.     Maker represents and agrees that the Indebtedness evidenced by this Note constitutes a commercial business loan and the proceeds thereof shall not be used for household or consumer purposes.

## VII. Expense Reimbursements.

**A.** Maker shall pay all fees and expenses related to the Loan including, without limitation, the fees and disbursements of Lender's counsel (including Lender's local counsel, if any, in the jurisdiction where the Property is located), the travel expenses of Lender's personnel related to the Loan, site inspection, appraisal fees (if needed), underwriting fees, credit reports, STR reports (if ordered), the cost of title searches and title insurance premiums where applicable, filing and recording charges, and any other applicable fees incurred related to the Loan. To the extent incurred, such expenses shall be paid by Maker at closing. For any post-closing matters requested by Maker requiring legal review (as determined in Lender's sole judgment), Maker will promptly pay Lender's attorney fees and any other fees required by Lender arising out of the review and consideration of the document or matter. All amounts payable by Maker hereunder shall be subject to late fees and interest.

**B.** Should the Indebtedness evidenced by this Note or any part thereof be: (i) collected at law or in equity or through any legal, bankruptcy, receivership, probate or other court proceedings; (ii) placed in the hands of attorneys for collection after the occurrence of an Event of Default; or (iii) the subject of any court proceeding involving the lien of the Security Instruments or their priority, Maker and all endorsers, guarantors and sureties of such Indebtedness jointly and severally agree to pay to Lender, in addition to the principal and interest due and payable hereunder, reasonable attorneys' and paralegals' fees and collection costs, and all other Obligations due pursuant to the terms of the Loan Documents including those incurred by Lender on any appeal.

## VIII. Maker's Waivers.

Maker and all endorsers, guarantors and sureties of the Indebtedness evidenced by this Note and any other persons liable or to become liable on or for such Indebtedness hereby severally waive presentment for payment, demand and notice of demand, dishonor and notice of dishonor, protest and notice of protest, and nonpayment and notice of nonpayment of this Note, and all other notices and demands, including without limitation, notice of intention to accelerate the maturity of this Note, notice of acceleration of the maturity of the Note, diligence in collection and the bringing of suit against any other party and hereby further agree to all renewals, extensions, modifications, partial payments, releases or substitutions of security, in whole or in part, with or without notice, whether before or after maturity. Maker hereby further waives and renounces, to the fullest extent permitted by law, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, marshalling, forbearance, valuation, stay, extension, redemption, appraisement, exemption and homestead now or hereafter provided by the Constitution and laws of the United States of America and of the State of Georgia, both as to itself and in and to all of its property, real and personal, against the enforcement and collection of the obligations evidenced by this Note or the other Loan Documents.

## IX.  Payment of Taxes and Fees.

Maker agrees to pay all costs, expenses, fees and taxes on or with respect to the execution, delivery, recordation, existence or possession of this Note, the Security Instrument and other Loan Documents, including, without limitation, all recording fees and any documentary stamp tax or intangible personal property tax now or hereafter required by Applicable Law to be affixed or paid with respect to this Note, the Security Instrument or the other Loan Documents.

## X.  Waiver of Trial by Jury.

Maker hereby waives, to the fullest extent permitted by Applicable Law, the right to trial by jury in any action, proceeding or counterclaim filed by any party, whether in contract, tort or otherwise relating directly or indirectly to this Note or any acts or omissions of the Maker in connection therewith or contemplated thereby.

## XI.  Releases; No Waiver; Amendment.

Lender may, without notice, and without regard to the consideration, if any, given or paid therefor, release or substitute any part of the property given as security for the repayment of the Indebtedness evidenced and represented by this Note without releasing any other property given as security for such Indebtedness, or may release any party obligated on or liable for the payment of the Indebtedness evidenced and represented by this Note without releasing any other party obligated on or liable for such Indebtedness, or may agree with any party obligated or liable for the repayment of the Indebtedness evidenced and represented by this Note to extend the time for payment of any part or all of such Indebtedness without releasing any party obligated on or liable for such Indebtedness. No failure to accelerate the debt evidenced hereby by reason of default hereunder, acceptance of a partial or past due payment, or indulgences granted from time to time shall be construed (i) as a novation of this Note or as a reinstatement of the Indebtedness evidenced hereby or as a waiver of such right of acceleration or of the right of Lender thereafter to insist upon strict compliance with the terms of this Note, or (ii) to prevent the exercise of such right of acceleration or any other right granted hereunder or by any Applicable Laws; and Maker hereby expressly waives the benefit of any statute or rule of law or equity now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with the foregoing. No extension of the time for the payment of this Note or any installment due hereunder, made by agreement with any person now or hereafter liable for the payment of this Note shall operate to release, discharge, modify, change or affect the original liability of Maker under this Note, either in whole or in part unless Lender agrees otherwise in writing. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

## XII.  Governing Law.

This Note and the rights, duties, obligations and liabilities of the parties hereunder and/or arising from or relating in any way to the Indebtedness evidenced by this Note or the loan transaction of which such Indebtedness and this Note are a part shall be governed by and construed for all purposes under the laws of the State of Georgia, the "Applicable Law".

## XIII.  Quarterly Reports; Certification.

So long as this Note shall remain unpaid and outstanding, within thirty (30) days of the end of each calendar quarter, Maker provide to Holder quarterly management prepared financial statements on the Property and an STR Report on the Property.  Furthermore, Maker will certify to Holder the following:

**A.**  The quarterly financial statements provided to Holder are true and correct;

**B.**  The STR Report is based on the current competitive set and is an accurate picture of the performance of the hotel located on the Property (the "Hotel"); and

**C.**  The Hotel is current on the franchise fees with Maker's franchisor and, otherwise, not in default of any of its obligations under the franchise agreement.

## XIV.  Miscellaneous.

Time is of the essence of this Note.  As used herein, the terms "Maker" and "Lender" shall be deemed to include their respective heirs, executors, legal representatives, successors, successors-in-title and assigns, whether by voluntary action of the parties or by operation of law. All personal pronouns used herein, whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural and vice versa.  Titles of articles and sections are for convenience only and in no way define, limit, amplify or describe the scope or intent of any provisions hereof.

Maker hereby consents to Lender communicating with the Property franchisor for any reason at any time so long as the Loan is outstanding.

IN WITNESS WHEREOF, Maker has executed, or caused these presents to be executed under seal, as of the day and year first above written.

MAKER:

**L N HOSPITALITY CLEVELAND LLC,**
an Ohio limited liability company

By: _____
Name: BHARATHBHAI. PATEL.
Title: MEMBER.

(COMPANY SEAL)

**L N PARKING CLEVELAND LLC**, an
Ohio limited liability company

By: _____
Name: BHARATHBHAI. PATEL.
Title: MEMBER.

(COMPANY SEAL)

**EXHIBIT "B"**

# PLEDGE AGREEMENT

**THIS PLEDGE AGREEMENT** (this "Agreement") is made and entered into, effective as of April 16 2019, by and between Bharathbhai Patel, an individual resident of the state of California (the "Pledgor"), and Access Point Financial, Inc., a Delaware corporation ("Access Point").

**WHEREAS**, the Pledgor is the legal and beneficial owner of one hundred percent (100%) of the outstanding membership interests (the "Pledged Membership Interests") in L N Hospitality Cleveland LLC, an Ohio limited liability company, and L N Parking Cleveland, LLC, an Ohio limited liability company (collectively, the "Borrower"); and

**WHEREAS**, Access Point has agreed to loan to Borrower the sum of Five Million and No/Dollars ($5,000,000.00) (the "Loan") pursuant to that certain Pledge Promissory Note dated even date herewith (the "Pledge Note"); and

**WHEREAS**, to induce Access Point to make the Loan and to secure Borrower's performance under the Pledge Note, the Pledgor has agreed to guaranty Borrower's repayment of the Pledge Note, as set forth in the certain Guaranty Agreement of even date herewith (the "Guaranty"); and

**WHEREAS**, to further induce Access Point to make the Loan and to secure Borrower's performance under the Pledge Note and the Pledgor's performance under the Guaranty, Pledgor has agreed to pledge to Access Point all of Pledgor's right, title and interest in the Pledged Membership Interests, as more fully set forth below.

**NOW, THEREFORE**, for and in consideration of the premises, the mutual covenants contained herein, and for Ten Dollars ($10.00) and all other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Pledge and Security Interest**. Pledgor hereby unconditionally grants and assigns to Access Point a continuing first priority security interest in and security title to the Pledged Membership Interests, together with the proceeds thereof, and all cash, additional securities and other property at any time and from time to time receivable or otherwise distributable in respect of or in exchange for any or all of the Pledged Membership Interests (collectively, the "Collateral"). Pledgor represents and warrants to Access Point that: (a) the Agreement has been executed by Pledgor as required to render the Agreement a legal, binding, valid and enforceable obligation of Pledgor, (b) the execution of the Agreement by Pledgor, and the performance of his obligations hereunder, do not contravene or constitute a violation of the terms of any other agreement to which Pledgor is a party; (c) Pledgor is the legal and equitable owner of the Pledged Membership Interests, and the percentage ownership set forth above for the Pledged Membership Interests is true and correct; and (d) Pledgor owns the Pledged Membership

-1-

Interests free and clear of all liens, charges, encumbrances and security interests of every kind and nature whatsoever. Beneficial ownership of the Pledged Membership Interests, including, without limitation, all voting, consensual and dividend rights, shall remain in Pledgor until the occurrence of an Event of Default (defined below).

**2.** **Obligations Secured**. This Agreement is made, and the pledge and security interest created hereby is granted to Access Point, to secure the payment and performance of all obligations of Borrower to Access Point under the Pledge Note.

**3.** **Additional Interest**. In the event that, during the term of this Agreement, any reclassification, readjustment or other change is declared or made in the capital structure of Borrower, all new, substituted and additional membership interests, or other securities, issued by reason of any such change and received by Pledgor or to which Pledgor shall be entitled, shall be immediately delivered to Access Point, together with assignments endorsed in blank by Pledgor (if applicable), and shall thereupon constitute Collateral to be held by Access Point under the terms of this Agreement. Furthermore, in the event that, during the term of this Agreement, any subscriptions, warrants or any other rights or options shall be issued in connection with the Pledged Membership Interests, all new membership interests, or other securities acquired through such subscriptions, warrants, rights or options by Pledgor shall be immediately delivered to Access Point, together with transfer powers endorsed in blank by Pledgor, and shall thereupon constitute Collateral to be held by Access Point under the terms of this Agreement.

**4.** **Delivery of the Collateral**. All certificates currently representing the Collateral shall be delivered to Access Point on or prior to the execution and delivery of this Agreement. All other promissory notes, certificates and instruments constituting Collateral from time to time or required to be pledged to Access Point pursuant to the terms of this Agreement (the "Additional Collateral") shall be delivered to Access Point promptly upon receipt thereof by or on behalf of Pledgor. All such promissory notes, certificates and instruments shall be held by Access Point pursuant hereto and shall be delivered in suitable form for transfer by delivery or shall be accompanied by duly executed instruments of transfer or assignment or undated transfer powers executed in blank, all in form and substance reasonably satisfactory to Access Point. If any Collateral consists of uncertificated securities, unless the immediately following sentence is applicable thereto, Pledgor shall cause Access Point (or its designated custodian, nominee or other designee) to become the registered holder thereof, or cause each issuer of such securities to agree that it will comply with instructions originated by Access Point (or its designated custodian, nominee or other designee) with respect to such securities without further consent by Pledgor. If any Collateral consists of securities entitlements, Pledgor shall transfer such securities entitlements to Access Point (or its designated custodian, nominee or other designee) or cause the applicable securities intermediary to agree that it will comply with entitlement orders by Access Point (or its designated custodian, nominee or other designee) without further consent by Pledgor.

17294695v2 25019-0379

**5.** **Covenants of Pledgor.** Pledgor hereby covenants and agrees with Access Point as follows:

(a)     Pledgor will keep the Collateral free and clear of all security interests, liens or encumbrances until this Agreement is terminated;

(b)     Pledgor will procure, execute, endorse and deliver all documents, including, but not limited to, financing statements, which Access Point may reasonably require to protect, enforce or otherwise effectuate Access Point's rights in the Collateral, and Pledgor hereby grants to Access Point an irrevocable power of attorney, coupled with an interest, with full power of substitution, to so act in Pledgor's name if Pledgor fails to do so; and

(c)     Pledgor will defend the title of the Pledged Membership Interests unto Access Point and Access Point's successors and assigns, against the lawful claims of all persons.

**6.** **Event of Default; Remedies.** As used herein, "Event of Default" shall be as defined in the Pledge Note. In addition to the remedies under the Pledge Note, upon the occurrence of an Event of Default, Access Point may, without further demand, advertisement or notice, exercise all the rights, powers and privileges of a secured party under the Uniform Commercial Codes of Georgia and California, as applicable, and any other applicable law in effect from time to time; and, in addition, Access Point may sell the Collateral or retain the Collateral in full or partial satisfaction of the obligations secured hereby. To the extent permitted by law, all rights of Access Point hereunder shall be cumulative. The sale of the Collateral by Access Point may be made for cash, upon credit or for future delivery as Access Point may from time to time determine, and shall be made in such manner (at public or private sale) and for such price or prices as Access Point may from time to time determine, without demand, notice or advertisement, and Access Point shall have the right to bid for and buy free from any claim or right of Pledgor of any kind, including any redemption right, the Collateral or any part thereof and to retain and dispose of the same without accountability to Pledgor. The proceeds of such sale or other disposition of the Collateral shall be applied as follows: (i) first, to the costs incurred in connection with such disposition; (ii) second, to any unpaid interest which may have accrued on any obligations secured hereby; (iii) third, to any unpaid principal obligation amount secured hereby; and (iv) fourth, to damages incurred by Access Point by reason of any breach of any obligation secured hereby; and any remaining proceeds shall be paid over to Pledgor or others as by law provided. Access Point need not give more than five (5) days' notice of the time and place of any public sale or of the time after which a private sale may take place, which notice Pledgor agrees is reasonable. Pledgor shall be liable for the deficiency if the proceeds of any sale or other disposition of the Collateral are insufficient to pay the obligations secured hereby, and Pledgor shall also be liable for any fees of any attorneys employed by Access Point to collect the obligations of Pledgor secured hereby.

17294695v2 25019-0379

**7.** **Return of Collateral to Pledgor**. No later than a date which is ten (10) days after Pledgor shall have repaid to Access Point or otherwise fully performed all of the obligations secured hereby, Access Point shall return to Pledgor all of the then remaining Collateral and all rights related thereto then held by Access Point, and this Agreement shall thereupon terminate.

**8.** **Disposition of Pledged Membership Interests**. The Pledged Membership Interests are not currently registered under any applicable federal or state securities laws, and disposition thereof after an Event of Default may be restricted to one or more private (instead of public) sales if such Pledged Membership Interests remain unregistered. Pledgor understands that upon such disposition, Access Point may approach only a restricted number of potential purchasers, and further understands that a sale under such circumstances may yield a lower price for the Pledged Membership Interests than if the Pledged Membership Interests were registered pursuant to federal and state securities laws and sold on the open market.

**9.** **Pledgor's Obligations Absolute**. The obligations of Pledgor under this Agreement shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against any other person, nor against other security or liens available to Access Point, or to Access Point's successors, assigns or agents. Pledgor hereby waives any right to require that an action be brought against any other person or to require that resort be had to any other security in favor of Access Point or any other person, prior to any exercise of Access Point's rights or remedies hereunder.

**10.** **Voting Rights**. Until an Event of Default occurs, Pledgor shall have the right to vote upon, or to give any approval or consent in respect of, the Pledged Membership Interests for all purposes not inconsistent with the provisions of this Agreement. For so long as Borrower's obligations to Access Point described in Section 2 of this Agreement remain unfulfilled, after an Event of Default, Access Point may exercise all voting rights, and all other ownership or consensual rights of or with respect to the Pledged Membership Interests, but under no circumstances is Access Point obligated by the terms of this Agreement to exercise such rights. Pledgor hereby appoints Access Point, which appointment shall be effective immediately upon the occurrence of an Event of Default, as Pledgor's true and lawful attorney-in-fact and hereby gives Access Point an IRREVOCABLE PROXY to vote the Pledged Membership Interests in any manner Access Point deems advisable for or against all matters submitted or which may be submitted to a vote of members. The power-of-attorney and irrevocable proxy granted hereby are coupled with an interest and shall be irrevocable.

**11.** **Notices**. All notices and other communications required or permitted hereunder shall be in writing and, if mailed by prepaid certified mail, shall be deemed to have been received on the earlier of the date shown on the receipt or three (3) days after the postmarked date thereof. In addition, notices hereunder may be delivered by hand, in which event such notice shall be deemed effective when delivered. Notices shall be sent to the addresses of the parties set forth below their signatures. Notice of change of address for notice shall also be governed by this Section.

**12.** **Consent.** By execution of this Agreement, Pledgor consents to the execution of the Agreement by any other Pledgor and to the pledge of any other Pledgor of its Pledged Membership Interests and waives any rights of first offer, rights of last refusal, or similar purchase rights it may have with respect thereto.

**13.** **Miscellaneous**. The provisions of this Agreement shall be construed and interpreted, and all rights and obligations of the parties hereto determined, in accordance with the laws of the state of Georgia. This Agreement, together with the Pledge Note and the Guaranty, constitute the entire agreement between Pledgor and Access Point with respect to the matters addressed herein, and may not be modified except by a writing executed by Access Point and delivered by Access Point to Pledgor. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which, taken together, shall constitute one and the same instrument. If any Section of this Agreement or part thereof shall for any reason be held or adjudged to be invalid, illegal or unenforceable by any court of competent jurisdiction, such section or part thereof so adjudicated invalid, illegal or unenforceable shall be deemed separate, distinct and independent, and the remainder of this Agreement shall remain in full force and effect and shall not be affected by such holding or adjudication. Time is of the essence of this Agreement.

**IN WITNESS WHEREOF,** the undersigned have executed this Agreement as of the day and year first above written.

PLEDGOR:

_____
Bharathbhai Patel

Address:_____
        _____

ACCESS POINT:

**ACCESS POINT FINANCIAL, INC.**

By:_____
Name:_____
Title:_____

Address: 1 Ravinia Drive
         Suite 900
         Atlanta, Georgia 30346

17294695v1 25019-0379

**EXHIBIT "C"**

# GUARANTY AGREEMENT

FOR VALUE RECEIVED, and in order to induce ACCESS POINT FINANCIAL, INC., a Delaware corporation ("Lender"), to extend or to continue to extend credit or other financial accommodations to L N HOSPITALITY CLEVELAND LLC, an Ohio limited liability company, and L N PARKING CLEVELAND LLC, an Ohio limited liability company (collectively, the "Borrower"), and for other good and valuable consideration, the receipt and adequacy of all of the foregoing as legally sufficient consideration being hereby acknowledged, the undersigned (the "Guarantor"), who either owns, directly or indirectly, a membership interest in Borrower or will otherwise benefit from Lender providing to Borrower such financial accommodations, hereby agrees in favor of Lender as follows:

1.  Guaranty of Obligations.

    (a)  Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Lender the prompt payment when due, whether at stated maturity, by acceleration or otherwise, of the Debt (as hereinafter defined).  Guarantor acknowledges and agrees that this Guaranty Agreement ("Guaranty") is a guaranty of payment and not of collection and upon any default of Borrower under the Loan Documents (as defined below), Lender may, at its option, proceed directly and at once, without notice, against Guarantor to collect and recover the full amount of the liability hereunder or any portion thereof, without proceeding against Borrower or any other person, or foreclosing upon, selling, or otherwise disposing of or collecting or applying against any of the collateral for the Debt. It is expressly understood and agreed that this is a continuing guaranty and that the obligations of Guarantor hereunder are and shall be absolute under any and all circumstances, without regard to the validity, regularity or enforceability of the Loan Documents, a true copy of each of said documents Guarantor hereby acknowledges having received and reviewed.

    (b)  Guarantor further covenants that this Guaranty shall remain and continue in full force and effect as to any modification, extension or renewal of the Loan Documents; that Lender shall not be under a duty to protect, secure or insure any security or lien provided by the Security Instruments (defined below) or other such collateral; and that indulgences or forbearance may be granted under any or all of such documents, all of which may be made, done or suffered without notice to, or further consent of Guarantor.

2.  Obligations and Documents Defined.

    (a)  The term "Debt" as used in this Guaranty shall mean the principal sum evidenced by the Note and secured by the Security Instruments, or so much thereof as may be outstanding from time to time, together with interest thereon at the rates of interest specified in the Note, late fees, prepayment consideration, and all other sums which may or shall become due and payable pursuant to the provisions of the Loan Documents.

    (b)  The term "Loan Documents" shall mean and include the Pledge Promissory Note dated as of April 15, 2019 in the original principal amount of $5,000,000.00 and executed by Borrower to the order of Lender (the "Note"); and (i) this Guaranty; (ii) the Pledge Agreement dated as of April 15, 2019 by the Guarantor; and (iii) UCC Financing Statements concerning membership interests of Borrower held by the Guarantor (collectively, the "Security Instruments"), together with

any extensions, renewals, refinancings, restructurings, modifications or replacements, in whole or in part, of or for any of the foregoing.

      3.    <u>Guaranty Absolute</u>. Guarantor agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected or impaired (a) by reason of the assertion by Lender of any rights or remedies which it may have under or with respect to any of the Loan Documents, against any person obligated thereunder; (b) by reason of any failure to file or record any of such instruments or to take or perfect any security intended to be provided thereby; (c) by reason of the release or exchange of any collateral covered by the Security Instruments or other collateral for the Debt; (d) by reason of Lender's failure to exercise, or delay in exercising, any such right or remedy or any right or remedy Lender may have hereunder or in respect to this Guaranty; (e) by reason of the commencement of a case under the Bankruptcy Code (hereafter defined) by or against any person obligated under the Note or the other Loan Documents, or the death or dissolution of any Guarantor; or (f) by reason of any payment made on the Debt, whether made by Borrower or Guarantor or any other person, which is required to be refunded pursuant to any bankruptcy or insolvency law; it being understood that no payment so refunded shall be considered as a payment of any portion of the Debt, nor shall it have the effect of reducing the liability of Guarantor hereunder. It is further understood, that if Borrower shall have taken advantage of, or be subject to the protection of, any provision in the Bankruptcy Code, the effect of which is to prevent or delay Lender from taking any remedial action against Borrower, including the exercise of any option Lender has to declare the Debt due and payable on the happening of any default or event by which under the terms of the Note or the other Loan Documents the Debt shall become due and payable, Lender may, as against Guarantor, nevertheless, declare the Debt due and payable and enforce any or all of its rights and remedies against Guarantor provided for herein.

      4.    <u>Subordination of Borrower's Obligations to Guarantor</u>. Any indebtedness of Borrower to Guarantor now or hereafter existing (including, but not limited to, any rights to subrogation Guarantor may have as a result of any payment by Guarantor under this Guaranty), together with any interest thereon, shall be, and such indebtedness is, hereby deferred, postponed and subordinated to the prior payment in full of the Debt. Until payment in full of the Debt (and including interest accruing on the Debt after the commencement of a proceeding by or against Borrower under the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. Sections 101 et seq., and the regulations adopted and promulgated pursuant thereto (collectively, "Bankruptcy Code"), which interest the parties agree shall remain a claim that is prior and superior to any claim of Guarantor notwithstanding any contrary practice, custom or ruling in cases under the Bankruptcy Code generally), Guarantor agrees not to accept any payment or satisfaction of any kind of indebtedness of Borrower to Guarantor and hereby assigns such indebtedness to Lender, including the right to file proof of claim and to vote thereon in connection with any such proceeding under the Bankruptcy Code, including the right to vote on any plan of reorganization. Further, if Guarantor shall be comprised of more than one person, firm or corporation, Guarantor agrees that until such payment in full of the Debt, (a) no one of them shall accept payment from the others by way of contribution on account of any payment made hereunder by such party to Lender, (b) no one of them will take any action to exercise or enforce any rights to such contribution, and (c) if any of Guarantor should receive any payment, satisfaction or security for any indebtedness of Borrower to any of Guarantor or for any contribution by the others of Guarantor for payment made hereunder by the recipient to Lender, the same shall be delivered to Lender in the form received, endorsed or assigned as may be appropriate for application on account of, or as security for, the Debt and until so delivered, shall be held in trust for Lender as security for the Debt.

5. <u>Subrogation and Other Rights</u>. Guarantor agrees that no payment, performance or enforcement of Guarantor's liabilities and obligations under this Guaranty shall cause Guarantor, by subrogation or otherwise, to acquire any of Lender's rights against Borrower or any property of Borrower (or any interest in such rights) unless and until Lender has received full and indefeasible payment of the Debt.

6. <u>Waivers</u>. Guarantor hereby waives, to the fullest extent permitted by law: (a) notice of acceptance of this Guaranty; (b) notice of any acceleration or other demand for payment of the Debt; (c) any and all notice of nonpayment, nonperformance or nonobservance or other proof, notice or demand, whereby to charge Guarantor therefor, or to which Guarantor might otherwise be entitled with respect to the Debt or the Loan Documents or with respect to Lender's enforcement of its rights and remedies thereunder; (d) notice of presentment, demand, protest, and notice of dishonor or nonpayment as to any instrument; (e) the pleading of any statute of limitations as a defense to the obligation hereunder; and (f) jury trial and the right to personal service in accordance with section 14(g).

7. <u>Guarantor Due Diligence and Benefit</u>. Guarantor represents and warrants to Lender that it is fully aware of the financial condition, assets and prospects of Borrower and that Guarantor is executing and delivering this Guaranty based solely upon Guarantor's own independent investigation thereof and in no part upon any representation, warranty or statement of Lender with respect to Borrower's financial condition, assets or prospects. Guarantor hereby knowingly accepts the full range of risks encompassed within a contract of guaranty, which risks Guarantor understands may include, without limitation, the possibility that Borrower may incur additional indebtedness to Lender for which Guarantor may be liable hereunder after Borrower's financial condition or means or ability to pay its lawful debts when they fall due has deteriorated.

8. <u>Application of Payments</u>. Lender may apply all moneys available to Lender for application in payment or reduction of the Debt in such priority and proportions and at such time or times and in such order and priority as Lender may elect.

9. <u>Collection Costs</u>. Guarantor shall be liable to Lender for, and shall pay to Lender on demand, all costs (including without limitation reasonable fees and expenses of legal counsel, whether of retained firms or of in-house staff) incurred by Lender in enforcing performance of or collecting any payments due under this Guaranty. All such amounts shall accrue interest at the Default Rate provided in the Note if not paid in full within five (5) days of Lender's written demand therefor, which interest shall accrue from the date demanded by Lender until paid in full by Guarantor. Interest at the greater of the Default Rate or the legal rate applicable to judgments shall accrue on any judgment obtained by Lender in connection with this Guaranty.

10. <u>Guarantor Information</u>. Guarantor agrees that, so long as this Guaranty remains in effect, Guarantor shall furnish to Lender from time to time, at such intervals and by such dates as may be required by Lender (by no more frequently than annually unless an Event of Default under the Note or the Security Instruments has occurred), Guarantor's federal and state income tax returns and a balance sheet and statement of changes in Guarantor's financial position, each certified by Guarantor as true, complete and accurate. Each such financial statement shall be in reasonable detail and prepared in accordance with consistently applied accounting methods acceptable to Lender. Guarantor shall permit Lender or its representatives to visit and inspect Guarantor's books and records during reasonable business hours and agrees to discuss Guarantor's financial condition with Lender.

11.    Assignment and Transfer.

(a)    Guarantor acknowledges that Lender, and each successor to Lender's interest, has the right, in its sole discretion, to transfer, sell, pledge, assign or otherwise encumber or dispose of its interest in the loan evidenced by the Loan Documents, to grant participations therein, or to issue pass-through certificates or other securities ("Securities") evidencing a beneficial interest in a rated or unrated public offering or private placement of which the loan evidenced by the Loan Documents will be made a part, without Guarantor's consent or any notice thereof to Guarantor. Lender also may split the Debt into one or more separate obligations, each of which will be separately guaranteed by this Guaranty.

(b)    If Lender, or any successor to Lender's interest, determines to undertake any action contemplated by subsection (a) above, Guarantor acknowledges that Lender may forward to each prospective purchaser, transferee, assignee, servicer, participant, investor or their respective successors (collectively, "Investor") or any agency rating the Securities, all documents and information which Lender now has or may hereafter acquire relating to Guarantor (including personal financial statement of Guarantor), as Lender determines necessary or desirable. Guarantor's execution of this Guaranty shall be deemed Guarantor's written consent to Lender's furnishing of such information, but, if requested by Lender, Guarantor agrees to confirm such consent to writing to Lender. Guarantor further agrees to cooperate with Lender in connection with any action contemplated under subsection (a) including, without limitation, ratifications of this Guaranty or execution of other documents deemed necessary by Lender or such transferee to create, perfect, protect or preserve the rights and interests to be acquired by it, meeting with any rating agency for due diligence purposes, and providing all information concerning Guarantor's financial condition as Lender reasonably may request.

12.    Power to Execute Guaranty.  Guarantor hereby certifies, represents, and warrants to Lender that Guarantor has full power and authority to execute this Guaranty, that Guarantor's execution and delivery of this Guaranty has been fully authorized and directed, that, as applicable, the persons executing this Guaranty on behalf of Guarantor have been duly authorized to do so by Guarantor, and that this Guaranty, once executed, shall be the valid and binding obligation of Guaranty enforceable in accordance with its terms.

13.    Notices. All notices and other communications under this Guaranty are to be in writing, addressed in the case of Lender to the address as set forth below and in the case of each Guarantor as set forth below such Guarantor's signature hereto, and shall be deemed to have been duly given (a) upon delivery, if delivered in person with receipt acknowledged by the recipient thereof, (b) one business day after having been timely deposited for overnight delivery, fee prepaid, with any reputable overnight courier service, or (c) three business days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by certified mail, postage prepaid, return receipt requested.  Each party may establish a new address from time to time by written notice to the other given in accordance with this section; provided, however, that no such change of address will be effective until written notice thereof is actually received by the party to whom such change of address is sent.  Notice to additional parties designated by a party entitled to notice are for convenience only and are not required for notice to a party to be effective in accordance with this section. Lender's notice address is as follows:  Access Point Financial, Inc., 1 Ravinia Drive, Suite 900, Atlanta, GA 30346, Attn: Dilip Petigara.

14.    Miscellaneous.

(a)    Entire Guaranty; Modification. All prior agreements, understandings, representations and communications between the parties, whether oral or written, with respect to this Guaranty are merged into this Guaranty which alone and completely expresses the agreement of Guarantor and Lender. Neither this Guaranty nor any provisions hereof will be modified, supplemented or waived, except by an agreement in writing signed by the party against whom enforcement is thereof is sought and then only to the extent expressly provided in such writing.

(b)    Binding Effect. The Guaranty shall be binding upon and inure to the benefit of Lender, its successors and assigns. This Guaranty shall be binding upon Guarantor and its heirs, executors, legal representatives, successors, successors and assigns, whether by voluntary action of the parties or by operation of law. If Guarantor shall be a partnership, the agreements and obligations on the part of such Guarantor herein contained shall remain in force and application notwithstanding any changes in the individuals composing the partnership and the term "Guarantor" shall include any altered or successive partnerships, but the predecessor partnerships and their partners shall not thereby be released from any obligations or liability hereunder. The foregoing shall not be construed to permit assignments or other transfers otherwise prohibited. If Guarantor consists of more than one person or entity, the obligations and liabilities of each such person or entity hereunder shall be joint and several.

(c)    Applicable Law. This Guaranty shall be deemed to be a contract entered into pursuant to the laws of the State of Georgia and shall in all respects be governed, construed, applied and enforced in accordance with applicable federal law and the laws of the State of Georgia, without giving effect to any conflict of laws principles.

(d)    Enforceability. If any provision of this Guaranty is found by competent judicial authority to be invalid or unenforceable, the other provisions of this Guaranty that can be carried out without the invalid or unenforceable provision will not be affected, and such invalid or unenforceable provision will be ineffective only to the extent of such invalidity or unenforceability and to the greatest extent possible to accomplish fairly the purposes and intentions of the parties hereto. All rights and remedies under this Guaranty are distinct and cumulative not only as to each other but as to any rights or remedies afforded by law or equity. They may be exercised together, separately or successively. Any failure by Lender to exercise any of its remedies does not constitute a waiver of that remedy in the future as to the same or any other default.

(e)    Ambiguity; Headings; Gender; and Certain Terms. Neither this Guaranty nor any uncertainty or ambiguity herein shall be construed or resolved against Lender by virtue of the fact that such document has originated with Lender as drafter. Guarantor agrees that this Guaranty shall be construed and interpreted according to the ordinary meaning of the words used so as to accomplish fairly the purposes and intentions of the parties hereto. Words used in this Guaranty may be used interchangeably in singular or plural form, and any pronoun shall be deemed to cover all genders. Section headings are for convenience only and shall not be used in interpretation of this Guaranty. "Herein," "hereof" and "hereunder" and other words of similar import refer to this Guaranty as a whole and not to any particular section, paragraph or other subdivision. Reference to days for performance shall mean calendar days unless business days are expressly indicated.

(f)     Multiple Counterparts.  This Guaranty may be executed in one or more counterparts, each of which counterpart will, for all purposes, be deemed an original, but all such counterparts together will constitute one instrument.

(g)     Consent to Jurisdiction; Service of Process.  Each Guarantor agrees and consents to the jurisdiction and venue of any state or federal court sitting in or having jurisdiction over DeKalb or Fulton County, Georgia with respect to any legal action, proceeding, or dispute between them and hereby expressly waives any and all rights under applicable law or in equity to object to the jurisdiction and venue of said courts.  Each Guarantor further irrevocably consents to service of process by certified mail, return receipt requested, to the address for such party last provided in accordance with the notice provision of this Guaranty and agrees that within thirty (30) days after such mailing, Guarantor so served shall appear or answer to any summons and complaint or other process and should Guarantor so served fail to appear or answer within said thirty-day period, said Guarantor shall be deemed in default and judgment may be entered by Lender against the said party for the amount as demanded in any summons and complaint or other process so served.

(h)     WAIVER OF JURY TRIAL.  GUARANTOR, IN ORDER TO INDUCE LENDER TO EXTEND FINANCIAL ACCOMMODATIONS TO BORROWER, HEREBY WAIVES ANY RIGHT SUCH PARTY MAY HAVE UNDER ANY APPLICABLE LAW TO A TRIAL BY JURY WITH RESPECT TO ANY SUIT OR LEGAL ACTION WHICH MAY BE COMMENCED BY OR AGAINST GUARANTOR CONCERNING THE INTERPRETATION, CONSTRUCTION, VALIDITY, ENFORCEMENT OR PERFORMANCE OF THIS GUARANTY TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW.

IN WITNESS WHEREOF, the undersigned has/have signed, sealed and delivered this Guaranty as of the _____ day of January, 2019 intending to be legally bound hereby.

**GUARANTOR:**

Signed, sealed and delivered in the
presence of:

_____
Bharathbhai Patel

_____
Notary Public
My Commission Expires: _____     SS#: _____

(NOTARY SEAL)                          Address for Notice:

                                       _____
                                       _____
                                       _____

IN WITNESS WHEREOF, the undersigned has/have signed, sealed and delivered this Guaranty as of the 24th day of January, 2019 intending to be legally bound hereby.

15    April

Signed, sealed and delivered in the
presence of:

**GUARANTOR:**

Bharathbhai Patel

_____
Notary Public
My Commission Expires: _____

(NOTARY SEAL)

SS#: ████████████

Address for Notice:
3657. OLD SANTA RITA ROAD "C"
SUITE C
PLEASANTON, CA 94588.

**See Attachment for
Notarization**
M.J.P.
01-24-2019

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**     CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Alameda_

On _January 24, 2019_ before me, _Maria J. Diaz, Notary Public_,
　　Date　　　　　　　　　　　　　　Here Insert Name and Title of the Officer

personally appeared _Bharathbhai Patel_
　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

MARIA J. DIAZ
COMM. #2229379
Notary Public - California
Alameda County
My Comm. Expires Feb. 22, 2022

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

Place Notary Seal and/or Stamp Above　　　Signature of Notary Public

———————— **OPTIONAL** ————————

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _Guaranty Agreement_

Document Date: _01 - 24 - 2019_　　　　　Number of Pages: _7_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____　　Signer's Name: _____
☐ Corporate Officer – Title(s): _____　☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General　　☐ Partner – ☐ Limited ☐ General
☒ Individual　　☐ Attorney in Fact　☐ Individual　　☐ Attorney in Fact
☐ Trustee　　☐ Guardian of Conservator　☐ Trustee　　☐ Guardian of Conservator
☐ Other: _____　　　　　☐ Other: _____
Signer is Representing: _____　　Signer is Representing: _____

©2017 National Notary Association

**EXHIBIT "D"**



access POINT
financial

December 11, 2019

L N HOSPITALITY CLEVELAND LLC
5300 RIVERSIDE DRIVE
CLEVELAND, OH
44135

RE: Past Due Payment
Asset Number: #7065601

Reference is made to that certain loan in the original principal amount of 5,000,000.00 USD (the "Loan") evidenced by that certain note dated as of 15-Apr-2019 by L N HOSPITALITY CLEVELAND LLC (the Note, together with each other documents and/or instruments evidencing, securing, governing, guarantying or otherwise relating to the Loan, the "Loan Documents").

We are writing to you in our capacity as servicer of the Loan to notify you that your payment due 02-Dec-2019 has not been received or partially satisfied and is now past due. This letter serves as formal notice and demand that Borrower immediately pay any and all sums that remain due and payable under the Loan.

Please forward your payment immediately using one of the methods below:

**WIRING INSTRUCTIONS :**

| | |
|---|---|
| Bank: | Wells Fargo Bank, N.A. |
| | 333 Market Street, 18th Floor |
| | San Francisco, CA 94105 |
| ABA# | ▉▉▉▉▉▉ |
| Credit: | Trimont Real Estate Advisors, LLC |
| | Custodial Deposit Clearing Account |
| Account# | ▉▉▉▉▉▉ |
| Reference: | #7065601 |

**CHECK PAYMENTS**

Trimont Real Estate Advisors LLC
P.O. BOX 931269
Atlanta, GA 31193-1269



**If you have already sent your payment, please disregard this letter.**

Notwithstanding the acceptance of the Partial Payment or any other partial payments at any time by Holder (or any servicer acting on its behalf), the Loan remains in default. No acceptance by Holder (or any servicer acting on its behalf) of the Partial Payment or any other partial payments shall be deemed or construed as a waiver any defaults described in this letter or otherwise existing under the Loan and/or the Loan Documents. Acceptance of the Partial Payment does not imply that any future partial payments will be accepted by Holder (or any servicer acting on its behalf), and shall not be deemed to be a waiver of Holder's right to reject partial payments, assess late charges, charge a default rate of interest, or to prevent Holder from exercising any right, remedy, or power available to Holder, including, without limitation, all rights, remedies, and powers granted under the Loan Documents and at law or in equity. Further, no failure to exercise or delay in exercising any right, remedy, power or privilege of Holder under the Loan Documents shall operate as a waiver, forbearance or postponement thereof, all of which are hereby expressly reserved.

This written notice is being transmitted as a courtesy to you, and is not intended as an admission that any written notice is otherwise required. The only agreements that exist between Holder and Borrower are those set forth in the Loan Documents, which may only be amended by agreement of the parties in writing.

Please be advised that the delivery of this letter shall not be deemed to constitute a waiver by lender of any of lender's rights or remedies under the Loan Documents. No failure or delay on the part of the lender in exercising any right or remedy shall operate as a waiver of any or such rights or remedies. Nothing contained in this letter is intended to create or constitute, or shall be deemed to be, a waiver, modification, relinquishment or forbearance by either servicer on behalf of lender or by lender of any of lender's rights and remedies under applicable law or the Loan Documents, including without limitation, any and all rights or remedies in connection with any defaults that may now or hereafter exist under the Loan Documents, all of which rights and remedies are hereby expressly reserved.

Sincerely,

Authorized Representative

Access Point Financial, as Lender

EXHIBIT "E"



**access POINT**
financial

January 22, 2020

L N HOSPITALITY CLEVELAND LLC
5300 RIVERSIDE DRIVE
CLEVELAND, OH
44135

RE: Past Due Payment
Asset Number: #7065601

Reference is made to that certain loan in the original principal amount of 5,000,000.00 USD (the "Loan") evidenced by that certain note dated as of 15-Apr-2019 by L N HOSPITALITY CLEVELAND LLC (the Note, together with each other documents and/or instruments evidencing, securing, governing, guarantying or otherwise relating to the Loan, the "Loan Documents").

We are writing to you in our capacity as servicer of the Loan to notify you that your payment due 02-Jan-2020 has not been received or partially satisfied and is now past due. This letter serves as formal notice and demand that Borrower immediately pay any and all sums that remain due and payable under the Loan.

Please forward your payment immediately using one of the methods below:

**WIRING INSTRUCTIONS :**

| | |
|---|---|
| Bank: | Wells Fargo Bank, N.A. |
| | 333 Market Street, 18th Floor |
| | San Francisco, CA 94105 |
| ABA# | ■■■■■■ |
| Credit: | Trimont Real Estate Advisors, LLC |
| | Custodial Deposit Clearing Account |
| Account# | ■■■■■■ |
| Reference: | #7065601 |

**CHECK PAYMENTS**

Trimont Real Estate Advisors LLC
P.O. BOX 931269
Atlanta, GA 31193-1269



**If you have already sent your payment, please disregard this letter.**

Notwithstanding the acceptance of the Partial Payment or any other partial payments at any time by Holder (or any servicer acting on its behalf), the Loan remains in default. No acceptance by Holder (or any servicer acting on its behalf) of the Partial Payment or any other partial payments shall be deemed or construed as a waiver any defaults described in this letter or otherwise existing under the Loan and/or the Loan Documents. Acceptance of the Partial Payment does not imply that any future partial payments will be accepted by Holder (or any servicer acting on its behalf), and shall not be deemed to be a waiver of Holder's right to reject partial payments, assess late charges, charge a default rate of interest, or to prevent Holder from exercising any right, remedy, or power available to Holder, including, without limitation, all rights, remedies, and powers granted under the Loan Documents and at law or in equity. Further, no failure to exercise or delay in exercising any right, remedy, power or privilege of Holder under the Loan Documents shall operate as a waiver, forbearance or postponement thereof, all of which are hereby expressly reserved.

This written notice is being transmitted as a courtesy to you, and is not intended as an admission that any written notice is otherwise required. The only agreements that exist between Holder and Borrower are those set forth in the Loan Documents, which may only be amended by agreement of the parties in writing.

Please be advised that the delivery of this letter shall not be deemed to constitute a waiver by lender of any of lender's rights or remedies under the Loan Documents. No failure or delay on the part of the lender in exercising any right or remedy shall operate as a waiver of any or such rights or remedies. Nothing contained in this letter is intended to create or constitute, or shall be deemed to be, a waiver, modification, relinquishment or forbearance by either servicer on behalf of lender or by lender of any of lender's rights and remedies under applicable law or the Loan Documents, including without limitation, any and all rights or remedies in connection with any defaults that may now or hereafter exist under the Loan Documents, all of which rights and remedies are hereby expressly reserved.

Sincerely,

Authorized Representative

Access Point Financial, as Lender

**EXHIBIT "F"**



**access POINT**
financial

February 11, 2020

L N HOSPITALITY CLEVELAND LLC
5300 RIVERSIDE DRIVE
CLEVELAND, OH
44135

RE: Past Due Payment
Asset Number: #7065601

Reference is made to that certain loan in the original principal amount of 5,000,000.00 USD (the "Loan") evidenced by that certain note dated as of 15-Apr-2019 by L N HOSPITALITY CLEVELAND LLC (the Note, together with each other documents and/or instruments evidencing, securing, governing, guarantying or otherwise relating to the Loan, the "Loan Documents").

We are writing to you in our capacity as servicer of the Loan to notify you that your payment due 02-Jan-2020 has not been received or partially satisfied and is now past due. This letter serves as formal notice and demand that Borrower immediately pay any and all sums that remain due and payable under the Loan.

Please forward your payment immediately using one of the methods below:

**WIRING INSTRUCTIONS :**

| | |
|---|---|
| Bank: | Wells Fargo Bank, N.A. |
| | 333 Market Street, 18th Floor |
| | San Francisco, CA 94105 |
| ABA# | |
| Credit: | Trimont Real Estate Advisors, LLC |
| | Custodial Deposit Clearing Account |
| Account# | |
| Reference: | #7065601 |

**CHECK PAYMENTS**

Trimont Real Estate Advisors LLC
P.O. BOX 931269
Atlanta, GA 31193-1269



**If you have already sent your payment, please disregard this letter.**

Notwithstanding the acceptance of the Partial Payment or any other partial payments at any time by Holder (or any servicer acting on its behalf), the Loan remains in default. No acceptance by Holder (or any servicer acting on its behalf) of the Partial Payment or any other partial payments shall be deemed or construed as a waiver any defaults described in this letter or otherwise existing under the Loan and/or the Loan Documents. Acceptance of the Partial Payment does not imply that any future partial payments will be accepted by Holder (or any servicer acting on its behalf), and shall not be deemed to be a waiver of Holder's right to reject partial payments, assess late charges, charge a default rate of interest, or to prevent Holder from exercising any right, remedy, or power available to Holder, including, without limitation, all rights, remedies, and powers granted under the Loan Documents and at law or in equity. Further, no failure to exercise or delay in exercising any right, remedy, power or privilege of Holder under the Loan Documents shall operate as a waiver, forbearance or postponement thereof, all of which are hereby expressly reserved.

This written notice is being transmitted as a courtesy to you, and is not intended as an admission that any written notice is otherwise required. The only agreements that exist between Holder and Borrower are those set forth in the Loan Documents, which may only be amended by agreement of the parties in writing.

Please be advised that the delivery of this letter shall not be deemed to constitute a waiver by lender of any of lender's rights or remedies under the Loan Documents. No failure or delay on the part of the lender in exercising any right or remedy shall operate as a waiver of any or such rights or remedies. Nothing contained in this letter is intended to create or constitute, or shall be deemed to be, a waiver, modification, relinquishment or forbearance by either servicer on behalf of lender or by lender of any of lender's rights and remedies under applicable law or the Loan Documents, including without limitation, any and all rights or remedies in connection with any defaults that may now or hereafter exist under the Loan Documents, all of which rights and remedies are hereby expressly reserved.

Sincerely,

Authorized Representative

Access Point Financial, as Lender



**EXHIBIT "G"**



March 11, 2020

L N HOSPITALITY CLEVELAND LLC
5300 RIVERSIDE DRIVE
CLEVELAND, OH
44135

RE: Past Due Payment
Asset Number: #7065601

Reference is made to that certain loan in the original principal amount of 5,000,000.00 USD (the "Loan") evidenced by that certain note dated as of 15-Apr-2019 by L N HOSPITALITY CLEVELAND LLC (the Note, together with each other documents and/or instruments evidencing, securing, governing, guarantying or otherwise relating to the Loan, the "Loan Documents").

We are writing to you in our capacity as servicer of the Loan to notify you that your payment due 02-Mar-2020 has not been received or partially satisfied and is now past due. This letter serves as formal notice and demand that Borrower immediately pay any and all sums that remain due and payable under the Loan.

Please forward your payment immediately using one of the methods below:

**WIRING INSTRUCTIONS :**

| | |
|---|---|
| Bank: | Wells Fargo Bank, N.A. |
| | 333 Market Street, 18th Floor |
| | San Francisco, CA 94105 |
| ABA# | ███████ |
| Credit: | Trimont Real Estate Advisors, LLC |
| | Custodial Deposit Clearing Account |
| Account# | ███████ |
| Reference: | #7065601 |

**CHECK PAYMENTS**

Trimont Real Estate Advisors LLC
P.O. BOX 931269
Atlanta, GA 31193-1269



**If you have already sent your payment, please disregard this letter.**

Notwithstanding the acceptance of the Partial Payment or any other partial payments at any time by Holder (or any servicer acting on its behalf), the Loan remains in default. No acceptance by Holder (or any servicer acting on its behalf) of the Partial Payment or any other partial payments shall be deemed or construed as a waiver any defaults described in this letter or otherwise existing under the Loan and/or the Loan Documents. Acceptance of the Partial Payment does not imply that any future partial payments will be accepted by Holder (or any servicer acting on its behalf), and shall not be deemed to be a waiver of Holder's right to reject partial payments, assess late charges, charge a default rate of interest, or to prevent Holder from exercising any right, remedy, or power available to Holder, including, without limitation, all rights, remedies, and powers granted under the Loan Documents and at law or in equity. Further, no failure to exercise or delay in exercising any right, remedy, power or privilege of Holder under the Loan Documents shall operate as a waiver, forbearance or postponement thereof, all of which are hereby expressly reserved.

This written notice is being transmitted as a courtesy to you, and is not intended as an admission that any written notice is otherwise required. The only agreements that exist between Holder and Borrower are those set forth in the Loan Documents, which may only be amended by agreement of the parties in writing.

Please be advised that the delivery of this letter shall not be deemed to constitute a waiver by lender of any of lender's rights or remedies under the Loan Documents. No failure or delay on the part of the lender in exercising any right or remedy shall operate as a waiver of any or such rights or remedies. Nothing contained in this letter is intended to create or constitute, or shall be deemed to be, a waiver, modification, relinquishment or forbearance by either servicer on behalf of lender or by lender of any of lender's rights and remedies under applicable law or the Loan Documents, including without limitation, any and all rights or remedies in connection with any defaults that may now or hereafter exist under the Loan Documents, all of which rights and remedies are hereby expressly reserved.

Sincerely,

Authorized Representative

Access Point Financial, as Lender

**EXHIBIT "H"**

# COVID-19 FORBEARANCE AGREEMENT

**THIS COVID-19 FORBEARANCE AGREEMENT** (this "*Agreement*") is dated as of April 1, 2020 (the "*Effective Date*"), by and between **L N HOSPITALITY CLEVELAND LLC**, an Ohio limited liability company, and **L N PARKING CLEVELAND LLC**, an Ohio limited liability company (collectively, "*Borrower*"), **BHARATHBHAI PATEL**, an individual resident of the State of California "*Guarantor*"), and **ACCESS POINT FINANCIAL, LLC**, a Delaware limited liability company (f/k/a Access Point Financial, Inc., a Delaware corporation ("*Access Point*"), as loan servicer for **APF – CPX II, LLC**, a Delaware limited liability company ("*Lender*").

RECITALS:

A.      Borrower is the owner of a hotel property (the "**Property**") located at 5300 Riverside Drive, Cleveland, in the County of Cuyahoga, State of Ohio, as more particularly described in the Loan Documents (as hereinafter defined).

B.      Borrower is the maker of that certain $5,000,000.00 Promissory Note, dated April 15, 2019, in favor of Lender (as amended, revised modified or substituted, the "**Note**"). The loan evidenced by the Note (the "**Loan**") is secured by, among other things, (i) that certain Pledge Agreement (the "**Pledge Agreement**"), dated April 15, 2019 and executed by Guarantor, as the sole owner(s) of Borrower, and (ii) that certain Guaranty Agreement, dated April 15, 2019 executed by Guarantor (the "**Pledge Loan Guaranty**"). The Note, Loan, Pledge Agreement, the Pledge Loan Guaranty and all other documents evidencing, securing or otherwise related to the loan evidenced by the Loan, as amended, revised modified or substituted, are collectively referred to herein as the "**Loan Documents**."

C.      Each and every promise, covenant, security interest, lien, pledge, guaranty, indemnity, mortgage, deed of trust, security agreement or other undertaking by Borrower, Guarantor or any other party in favor of Lender in connection with the Loan are herein collectively referred to as the "**Collateral**."

D.      Access Point subsequently assigned the Loan to APF – CPX II, LLC, a Delaware limited liability company, on a servicing retained basis.

E.      As of Effective Date, Lender's accrued and unpaid legal fees and expenses that have been actually incurred as of the Effective Date in this matter are $3,500 (hereinafter referred to as the "**Attorneys' Fees**").

F.      The parties to this Agreement shall be referred to individually as a Party and collectively as the "**Parties**".

**NOW, THEREFORE,** Borrower and Guarantor (each an "**Obligor**" and collectively, "**Obligors**") represent and warrant to Lender and agree with Lender, and Lender agrees with Obligors, as follows:

1.      **Definitions**. Unless otherwise specifically defined herein, each capitalized term used herein which is defined in the Loan Documents shall have the meaning assigned to such term in the Loan Documents. Each reference to "hereof," "hereunder," "herein" and "hereby" and each other similar reference and each reference to "this Agreement" and each other similar reference contained in the Loan Documents shall from and after the date hereof refer to the Loan Documents as amended hereby. Any payments to be made by the Borrower under this Agreement shall be paid in immediately available funds, unless otherwise expressly provided herein. The Recitals set forth above are made a part hereof by this reference, and are acknowledged by the Obligors to be true and correct.

2.      **Payment Deferral and Forbearance Request**. Although Borrower's payments under the Loan Documents were less than thirty (30) days past due on March 31, 2020, as a consequence of the negative impact from the Coronavirus Disease 2019 (also known as COVID-19), Obligors have

informed Lender that they do not have sufficient resources to make payments due under the Note as and when they come due and have requested that Lender forbear from collection of all monthly payments due under the Loan Documents of interest and principal commencing April 1, 2020, and expiring (without demand or notice from Lender) on June 30, 2020 (the "**Payment Deferral Period**"). Lender is willing to grant the requested forbearance request, but only upon the terms and conditions set forth in this Agreement. The Parties have entered into this Agreement to evidence their agreement regarding the modifications to the Loan Documents and the conditions applicable thereto.

3.  **Intentionally Omitted**.

4.  **Confirmation of Recitals and Other Matters**. To induce Lender to enter into this Agreement, the Obligors agree with Lender, and represent and warrant to Lender:

    a.  As of the execution of this Agreement, the Recitals to this Agreement are true and correct and contain no material omission of fact.

    b.  Borrower and Guarantor acknowledge that the outstanding unpaid balance of the Note (including outstanding principal and accrued, unpaid interest) as of March 31, 2020 is principal in the amount of $5,000,000.00, plus accrued and outstanding interest in the amount of $55,972.20, plus late fees of $2,618.06, for a total amount of $5,058,590.26, exclusive of attorneys' fees.

5.  **Loan Payment Deferral**. Pursuant to Borrower's request, during the Payment Deferral Period, if the payments of principal, interest, or both, normally due and owing under the Note are not paid as and when due, the Borrower shall be deemed to have received an advance under the applicable Note in the amount of the interest otherwise due (each instance a "**Loan Interest Advance**"). Once deemed advanced hereunder, each Loan Interest Advance shall bear interest from the date of the Loan Interest Advance until paid in full, at a rate per annum equal to the rate for the applicable Note. Upon expiration of the Payment Deferral Period, monthly payments under the Note will resume according to the terms of the Note and all Loan Interest Advances shall be paid in full upon maturity of the Note. If prior to the Effective Date, the Note provided for the Borrower to make payments of principal and interest at any time during the Payment Deferral Period, then the date such payments shall commence (or resume, as the case may be) on the first regularly scheduled payment date under the Note immediately following the expiration of the Payment Deferral Period. Borrower may prepay all Loan Interest Advances, and any other payments deferred under the terms of this Agreement, at any time without an obligation to pay Lender any prepayment consideration that would otherwise be due under the Loan Documents. No provision of this Agreement amends, extends or otherwise postpones the maturity date of the Loan.

6.  **Financial Covenant Relief**. To the extent that the Loan Documents contain a Financial Covenant (as defined below) and Borrower has failed to comply with any Financial Covenant during the Payment Deferral Period, Lender agrees to forbear during the Payment Deferral Period from exercising any of its default-related rights or remedies under the Loan Documents and applicable law that arise exclusively from any default relating to a Financial Covenant. For purposes of this Section only, "**Financial Covenant**" means any covenant in the Loan Documents requiring Borrower to maintain any ratio that is calculated, in part, based on the revenue, cash flow or net income of Borrower or any guarantor. Borrower acknowledges that this accommodation does not constitute a waiver of any of Lender's rights, and that the delay will not lead to a waiver of or prejudice to Lender's rights with respect to a Financial Covenant. Borrower acknowledges and agrees that Lender's agreement to forbear from exercising its default-related rights and remedies as described in this Section does not relate or extend to any actions that Lender may take under the

Loan Documents necessary to the administration of the Note or the protection, preservation or perfection of Lender's interest in any Collateral.

7. **Modified Financial Reporting Requirements**. If the Loan Documents require Borrower or any Guarantor to provide any Financial Reports (defined below) to Lender that would be required to be delivered during the Payment Deferral Period, such Financial Reports shall be delivered to Lender no less than ten (10) calendar days prior to the expiration of the Payment Deferral Period, or, for any tax returns required to be delivered during the Payment Deferral Period, the later of ten (10) calendar days prior to the expiration of the Payment Deferral Period, or ten (10) calendar days after filing. For purposes of this Section only, "**Financial Reports**" means any financial reports or other information, if any, required to be delivered by Borrower or any guarantor under and in accordance with the Loan Documents. Failure to comply with the reporting requirements in this Section shall constitute an Event of Default under the Loan Documents. Borrower shall continue to provide to Lender all other Financial Reports as required by the terms of the Loan Documents.

8. **Revenues During Payment Deferral Period**. Until Borrower is current on its obligations to Lender, and all Loan Interest Advances repaid in full, Borrower and Guarantors agree that all revenues generated from the ownership or operations of the Property, whether from room rents, event hosting or other sources, will be used solely for allowable normal and customary operating expenses and approved capital expenditures. Notwithstanding any provision of this Agreement or the Loan Documents to the contrary, the Obligors agree that no fees, charges, or compensation shall be paid or distributed to any of the Obligors or their respective general partners, limited partners, members, or other related persons or entities, if any, or to any affiliates thereof, until Borrower is current on its obligations to Lender, and all Loan Interest Advances repaid in full. During the Payment Deferral Period, Borrower agrees to remit to Lender, no less frequently than monthly, all NOI, as defined below. Borrower's remittance of NOI does not replace or waive Borrower's obligation to make any required payments on the Loan not otherwise deferred in this Agreement. "**NOI**" shall mean all revenue or income generated by operations of the Property, including, but not limited to revenues derived from room rentals, deposits, fees, gift store sales, food and beverage service, laundry and vending income, and insurance and condemnation awards, less only those allowable expenses and approved capital expenditures relative to the operation of the Property. Allowable expenses shall include property management fees paid pursuant to an agreement with an unaffiliated third-party manager approved by Lender and already in effect on the date hereof.

9. **Government Coronavirus-related Loans, Grants and Other Relief**.

   (a) Notwithstanding any provision of the Loan Documents to the contrary, the effect of negative pledge, covenant not to encumber, due on sale or encumbrance or other restrictions or covenants contained in the Loan Documents shall be suspended and of no effect with respect to (but only to) Borrower or Guarantor's participation in any Pandemic Relief Program (as defined below), provided that all Pandemic Proceeds received are applied in accordance with this Section 9.

   (b) Notwithstanding the foregoing repayment schedule, Borrower shall bring the Loan current, including repayment in full of all Loan Interest Advances, upon receipt of (i) business income (e.g., business interruption) insurance proceeds by Borrower, or (ii) upon receipt of any other financial relief or assistance available to Borrower from any other source (each a "**Pandemic Relief Program**"), including, but not limited to, any local, state, or federal government assistance or relief program, whether in the form of a loan, grant, loan forgiveness, tax credits or other monetary benefit (the proceeds described in clauses (i) and (ii) are individually and collectively referred to herein as "**Pandemic Proceeds**"), but only to the extent permitted by the statutes, rules, regulations and officially promulgated guidelines applicable to the subject relief program(s) (collectively, "**Applicable Laws**").

Borrower and Guarantor further covenant and agree that no Pandemic Proceeds will be paid, pledged, hypothecated, assigned or otherwise transferred to any owner or creditor of Borrower, any affiliate of Borrower, any Guarantor or any third party prior to making the payments due Lender under <u>subsection 9(a)</u> above.

(c) To the fullest extent permitted by Applicable Laws: (a) as security for the payment and performance of the Loan, Borrower and each Guarantor hereby absolutely and unconditionally transfers, sets over and assigns to Lender all present and future right, title and interest of Borrower in and to all Pandemic Proceeds; and (b) this <u>subsection 9(c)</u> is intended to be and is an absolute present assignment from Borrower to Lender, it being intended hereby to establish a complete and present transfer of all Pandemic Proceeds. Any Pandemic Proceeds received by a Borrower shall be applied to the unpaid balance of the Loan as provided above, and any Pandemic Proceeds received by Borrower shall be held in trust by Borrower for the sole benefit of Lender for such purpose.

10. **Conditions Precedent**. The deferral of the payments described in <u>Section 5</u> above, and the other amendments to the Loan Documents set forth herein, shall not be effective unless and until each of the following conditions precedent is satisfied or waived in writing by Lender in its discretion:

(a) Borrower, Guarantor, and Lender shall have duly executed and delivered an original counterpart of this Agreement;

(b) The Obligors shall have paid to Lender, in immediately available funds, the amount of $3,500 for Attorneys' Fees incurred by Lender through Effective Date;

(c) In addition to the payment of Lender's Attorneys' Fees in clause (b) above, the Obligors shall have paid or reimbursed Lender for all reasonable out-of-pocket expenses incurred by Lender and its counsel in connection with the preparation, execution and delivery of this Agreement, and any related documents, filings, statements, certificates, affidavits or instruments executed in connection therewith (collectively, the "*Forbearance Documents*"); and

(d) Borrower shall have provided evidence satisfactory to Lender that Borrower has applied for relief under at least one of the available Pandemic Relief Programs, including but not limited to the Small Business Administration's Paycheck Protection Program or the Economic Injury Disaster Loans Program.

11. **Representations and Warranties**. As a material inducement to Lender to agree to enter into this Agreement and the other Forbearance Documents, if any, Obligors represent and warrant to Lender that:

(a) This Agreement and the other Forbearance Documents constitute a valid and legally binding obligation of each Obligor (to the extent a party thereto) enforceable in accordance with their respective terms and do not violate, conflict with, or constitute any default under any law or regulation binding on or applicable to any Obligor's organizational documents, or any mortgage, lease, credit, loan agreement, contract, or other instrument binding upon or affecting any Obligor;

(b) Excluding Loan payments deferred pursuant to this Agreement, no default or Event of Default under the Loan Documents exists as of the date hereof;

(c) Lender has fully and timely performed all of its obligations and duties in compliance with the Loan Documents and applicable law, and has acted reasonably, in good faith and appropriately under the circumstances; and

(d)  No setoffs, defenses, claims, counterclaims or recoupment of any nature whatsoever on the part of any Obligor to payment or performance of such Obligor's obligations under the Loan Documents (collectively, the **"Obligations"**) as modified pursuant to this Agreement and the other Forbearance Documents, exists as of the date hereof.

Obligors agree that the falsity or inaccuracy of any of the foregoing representations and warranties in any material respect shall constitute an Event of Default pursuant to the Loan Documents.

12.  **Reaffirmation of Loan Documents**. Except as expressly stated in this Agreement, the Note, the Guaranty, and the other Loan Documents shall be and remain in full force and effect, without modification, and Borrower and Guarantor hereby ratify and reaffirm their respective Obligations, as so amended by this Agreement. This Agreement constitutes a "Loan Document" for all purposes of the definition of Loan Documents. The execution and delivery of this Agreement is not to be interpreted or construed as, and in fact does not constitute, a novation, payment, or satisfaction of all or any portion of the Loan or any other Obligations; rather, this Agreement is strictly amendatory in nature. The Loan and the other Obligations continue to be secured by the Collateral, as amended herein, without change in nature, amount, or priority. Borrower and Guarantor ratify and reaffirm all the provisions of the Loan Documents, except as expressly amended by this Agreement. Notwithstanding anything to the contrary herein, this Agreement will not be construed or deemed as a limitation or release of Lender's available rights and remedies under the Loan Documents, at law or in equity, in connection with any default or event of default whether now existing or hereafter occurring.

13.  **Release of Claims by Obligors**. Obligors, each for themselves and on behalf of their respective agents, employees, representatives, affiliates, predecessors-in-interest, successors, and assigns (such persons and entities other than Borrower are referred to collectively as the **"Other Releasors"**), do hereby release, discharge and acquit Lender, and its officers, directors, shareholders, agents, employees, and affiliates, and their respective successors, heirs and assigns (collectively, the **"Released Parties"**), of and from any and all rights, claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, causes of action, promises, damages, costs, losses and expenses of every kind, nature, description or character, and irrespective of how, why, or by reason of what facts, which could or may be claimed to exist, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, arising prior to the execution of this Agreement (collectively, the **"Claims"**), which in any way arise out of, are connected with or relate to any or all of the following: (a) the Loan or the administration of the Loan, as well as any action or inaction of the Released Parties or any of them with respect to the Loan or the administration thereof; (b) any or all of the transactions which are the subject of or contemplated by any or all of the Loan Documents; (c) the Collateral for the Loan; or (d) any fact, matter or transaction pertaining to any of the foregoing; provided, however, this release only applies to claims or defenses which exist or existed or could have been asserted based upon any events or conduct occurring as of or prior to the execution of this Agreement by the parties hereto. Obligors and the Other Releasors also each hereby covenant and agree not to make any Claims or to commence a suit, claim or proceeding of any kind or nature, cause, or permit to be prosecuted any of, or to voluntarily assist or cooperate in the prosecution of, any action at law or in equity against the Released Parties or any of them for or on account of the Claims.

14.  **Further Assurances**. Borrower shall promptly correct any defect or error that may be discovered in any Loan Document or in the execution, acknowledgment or recordation of any Loan Document. Promptly upon request by Lender, Borrower also shall do, execute, acknowledge, deliver, record, re-record, file, re-file, register and re-register, any and all deeds, conveyances, mortgages, deeds of

trust, trust deeds, assignments, estoppel certificates, financing statements and continuations thereof, notices of assignment, transfers, certificates, assurances and other instruments as Lender may reasonably require from time to time in order: (a) to carry out more effectively the purposes of the Loan Documents; (b) to perfect and maintain the validity, effectiveness and priority of any security interests intended to be created by the Loan Documents; and (c) to better assure, convey, grant, assign, transfer, preserve, protect and confirm unto Lender the rights granted now or hereafter intended to be granted to Lender under any Loan Document or under any other instrument executed in connection with any Loan Document or that Borrower may be or become bound to convey, mortgage or assign to Lender in order to carry out the intention or facilitate the performance of the provisions of any Loan Document. Borrower shall furnish to Lender evidence satisfactory to Lender of every such recording, filing or registration.

15.    **Government Deferral Order**. If any federal, state or local government unit, regulatory agency, or executive issues an order requiring a moratorium, stay, or otherwise imposes a mandatory forbearance, modification, deferral or other limit on the collection of loan payments of any kind during the term of the Loan ("**Government Deferral Order**"), and subject to any such Government Deferral Order, any deferral or similar period required by such Government Deferral Order shall be deemed to run concurrently with the Payment Deferral Period. This includes any change to the payment schedule in which Lender has agreed to collect less than the full principal and interest otherwise due under the original Loan Documents.

16.    **No Commitment to Extend, Modify or Forbear.** EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT, LENDER IS NOT COMMITTED, AND IS NOT COMMITTING AT THIS TIME, TO EXTEND, MODIFY OR OTHERWISE RESTRUCTURE ANY LOAN, OR FORBEAR FROM EXERCISING ANY OF ITS RIGHTS OR REMEDIES UNDER THE LOAN DOCUMENTS, AS AMENDED BY THIS AGREEMENT. NO PRIOR COURSE OF DEALING, NO USAGE OF TRADE, AND NO ORAL STATEMENTS OR COMMENTS BY LENDER OR ITS OFFICERS, EMPLOYEES, ATTORNEYS OR OTHER AGENTS WILL BE DEEMED TO BE A COMMITMENT BY LENDER TO EXTEND, MODIFY, OR OTHERWISE RESTRUCTURE ANY LOAN OR FORBEAR FROM EXERCISING ANY OF ITS RIGHTS OR REMEDIES, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, OR UNLESS THE SAME SHALL BE REDUCED IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF LENDER.

17.    **Event of Default**. If any Obligor fails to perform when due any of its obligations under this Agreement, and such failure continues to exist five (5) business days after written notice thereof to the applicable Obligor(s), then such failure to perform shall constitute an Event of Default under the Loan Documents without further notice, action or demand by Lender, and Lender's agreement to forbear from exercising its rights and remedies under the Note and other Loan Documents shall immediately terminate, without further notice or demand, and Lender may, at its option, accelerate the Note and/or exercise any and all other rights and remedies available to it under the Loan Documents, at law or in equity.

18.    **Counterpart and Electronic Signatures**. This Agreement may be issued, executed and then delivered via facsimile transmission, by sending PDF or other copies hereof via email or other electronic means and in one or more counterparts, each of which shall be (i) an original, and all of the counterparts of which taken together shall constitute one and the same agreement, (ii) a valid and binding agreement and fully admissible under state and federal rules of evidence and (iii) enforceable under UCC Section 3-309, UCC Section 3-604, or any other similar statute (with any provision thereunder to the contrary being waived hereby), without regard to any loss or destruction of any written counterpart hereof, the parties hereto agreeing that the possession or maintenance of an executed and delivered, scanned, electronic or digital version hereof shall constitute possession hereof, and shall not constitute the destruction hereof and shall not result in the discharge of any

obligation evidenced hereby, notwithstanding UCC Section 3-604 or any other similar statute. If this is a promissory note and issued via electronic signature in electronic format it shall also constitute a "transferable record" under UETA and/or ESIGN or other equivalent, applicable law.

**[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY; SIGNATURES CONTAINED ON FOLLOWING PAGES]**

**IN WITNESS WHEREOF**, this Agreement has been duly executed and delivered by the parties hereto under seal as of the date of Borrower's execution indicated below.

*Borrower*:

**L N HOSPITALITY CLEVELAND LLC,**
an Ohio limited liability company

By:_____ [Seal]

Print Name: Bharathbhai Patel

Its: Member

Date: April 28TH , 2020

**L N PARKING CLEVELAND LLC,**
an Ohio limited liability company

By:_____ [Seal]

Print Name: Bharathbhai Patel

Its: Member

Date: April 28TH , 2020

*[Signatures continue on the next page]*

Guarantor hereby consents and agrees to the provisions of this Agreement and agrees that the Guaranty previously executed by Guarantor shall continue in full force as provided therein. Guarantor, by executing this Agreement, hereby assents to the terms and conditions of this Agreement and ratifies and reaffirms the terms and conditions of the Guaranty, which Guaranty shall remain in full force and effect.

*Guarantor:*

_____ [SEAL]
Print Name: Bharathbhai Patel
Date: April 28th , 2020

*[Signatures continue on the next page]*

*Lender:*

**APF – CPX II, LLC,**

a Delaware limited liability company

By: **ACCESS POINT FINANCIAL, LLC,** a Delaware
limited liability company, as loan servicer for
Lender

By: _____ [Seal]

Dilip R. Petigara

Chief Executive Officer

**EXHIBIT "I"**

# FIRST AMENDMENT TO COVID-19 FORBEARANCE AGREEMENT

**THIS FIRST AMENDMENT TO COVID-19 FORBEARANCE AGREEMENT** (this "*Amendment*") is dated as of July 1 2020 (the "*Effective Date*"), by and among **L N HOSPITALITY CLEVELAND LLC**, an Ohio limited liability company, and **L N PARKING CLEVELAND LLC**, an Ohio limited liability company (collectively, the "*Borrower*"), **BHARATHBHAI PATEL**, an individual resident of the State of California(the "*Guarantor*" and/or "*Pledgor*" as applicable), (Borrower, Guarantor and Pledgor are hereinafter collectively referred to as the "*Obligors*"), and **ACCESS POINT FINANCIAL, LLC**, a Delaware limited liability company (f/k/a Access Point Financial, Inc., a Delaware corporation; "**Access Point**"), as loan servicer for **APF – CPX II, LLC**, a Delaware limited liability company ("*Lender*").

## RECITALS:

A.     PRIOR AGREEMENT.  Obligors and Lender have previously entered into that certain COVID-19 Forbearance Agreement dated April 1, 2020 (hereinafter referred to as the "**Forbearance Agreement**").

B.     REQUEST.  Obligors wish to amend the Forbearance Agreement.  Lender is willing to grant the requested forbearance, but only upon the terms and conditions set forth in this Amendment.

**NOW, THEREFORE**, Obligors represent and warrant to Lender and agree with Lender, and Lender agrees with Obligors, as follows:

1.     **Capitalized Terms**.  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Forbearance Agreement.

2.     **AMENDMENT TO FORBEARANCE AGREEMENT**.

a.  Paragraph 2 of the Forbearance Agreement is hereby deleted in its entirety and replaced with the following:

"2.     **Payment Deferral and Forbearance Request**. Although Borrower's payments under the Loan Documents were less than thirty (30) days past due on March 31, 2020, as a consequence of the negative impact from the Coronavirus Disease 2019 (also known as COVID-19), Obligors have informed Lender that they do not have sufficient resources to make payments due under the Note as and when they come due and have requested that Lender forbear from collection of all monthly payments due under the Loan Documents of interest and principal commencing April 1, 2020, and expiring (without demand or notice from Lender) on June 30, 2020 (the "**Initial Payment Deferral Period**"). Although Borrower's payments under the Loan Documents were less than thirty (30) days past due on May 31, 2020, as a consequence of the continuing negative impact from the Coronavirus Disease 2019 (also known as COVID-19), Obligors have informed Lender that they do not have sufficient resources to make payments due under the Note as and when they come due and have requested that Lender forbear from the collection of the monthly payments of principal and fifty percent (50%) of the monthly payments of interest, commencing July 1, 2020 and expiring (without demand or notice from Lender) on September 30, 2020 (the "**Second Payment Deferral Period**"). The Initial Payment Deferral Period and the Second Payment Deferral

Period are collectively referred to in this Agreement as the "**Payment Deferral Period.**" The Obligors shall also pay to Lender any past due payment of interest that was incurred, but not paid, during the Payment Deferral Period. No notice or cure period shall be required or afforded for such Non-Deferred Interest, notwithstanding anything in the Forbearance Agreement or this Amendment to the contrary. Lender is willing to grant the requested forbearance request, but only upon the terms and conditions set forth in the Forbearance Agreement and this Amendment. The Parties have entered into this Amendment to evidence their agreement regarding the modifications to the Loan Documents and the conditions applicable thereto."Paragraph 5 of the Forbearance Agreement is hereby deleted in its entirety and replaced with the following:

"5.    **Loan Payment Deferral**. Pursuant to Borrower's request, during the Payment Deferral Period, if the payments of principal, interest, or both, normally due and owing under the Note are not paid as and when due, the Borrower shall be deemed to have received an advance under the applicable Note in the amount of the interest otherwise due (each instance a "**Loan Interest Advance**"). Once deemed advanced, interest shall accrue on each Loan Interest Advance under this Amendment (and has been accruing on each Loan Interest Advance originally made under the Forbearance Agreement) at the applicable Note rate, and is compounded monthly until paid in full. Upon expiration of the Payment Deferral Period, monthly payments under the Note will resume according to the terms of the Note and all Loan Interest Advances shall be paid in full upon maturity of the Note. If prior to the Effective Date, the Note provided for the Borrower to make payments of principal and interest at any time during the Payment Deferral Period, then such payments shall commence (or resume, as the case may be) on the first regularly scheduled payment date under the Note immediately following the expiration of the Payment Deferral Period. Borrower may prepay all Loan Interest Advances, and any other payments deferred under the terms of this Agreement, at any time without an obligation to pay Lender any prepayment consideration that would otherwise be due under the Loan Documents. No provision of this Agreement amends, extends or otherwise postpones the maturity date of the Loan."

3.    **Conditions Precedent**. Lender's agreement to forbear (as modified by this Amendment) shall not be effective unless (and shall only remain effective if) all of the following conditions precedent are satisfied as and when provided in this Amendment:

a.    Borrower, Guarantor, Pledgor and Lender shall have duly executed and delivered an original counterpart of this Agreement;

b.    Upon execution hereof, Obligors shall pay to Lender, in immediately available funds, a modification fee in the amount of Two Thousand Five Hundred and 00/100 Dollars ($2,500.00); and

c.    The Three Thousand Five Hundred and 00/100 Dollars ($3,500) for Attorneys' Fees incurred by Lender through Effective Date.

4.    **Additional Cash Collateral**. Borrower and Guarantor shall ensure that all net sales proceeds from the upcoming sale of the Courtyard Hotel in Aurora, Colorado owned by an affiliate of Borrower named L N Hospitality Denver LLC, an Colorado limited liability company, shall be remitted directly Lender (or its servicer or custodian) by the escrow agency or closing attorney handling the sale of

said Courtyard Hotel, which proceeds shall be held in reserve with Lender (or its servicer or custodian) as additional cash collateral for the Loan pursuant to a cash collateral agreement with Borrower in form and substance acceptable to Lender in its sole and absolute discretion.

5.     **Representations and Warranties.** As a material inducement to Lender to agree to enter into this Amendment, Obligors represent and warrant to Lender that:

(a)     This Amendment and the other Forbearance Documents constitute a valid and legally binding obligation of each Obligor (to the extent a party thereto) enforceable in accordance with their respective terms and do not violate, conflict with, or constitute any default under any law or regulation binding on or applicable to any Obligor's organizational documents, or any mortgage, lease, credit, loan agreement, contract, or other instrument binding upon or affecting any Obligor;

(b)     Excluding Loan payments deferred pursuant to this Amendment, no default or Event of Default under the Loan Documents exists as of the date hereof;

(c)     Lender has fully and timely performed all of its obligations and duties in compliance with the Loan Documents and applicable law, and has acted reasonably, in good faith and appropriately under the circumstances; and

(d)     No setoffs, defenses, claims, counterclaims or recoupment of any nature whatsoever on the part of any Obligor to payment or performance of such Obligor's obligations under the Loan Documents (collectively, the "**Obligations**") as modified pursuant to this Amendment and the other Forbearance Documents, exists as of the date hereof.

Obligors agree that the falsity or inaccuracy of any of the foregoing representations and warranties in any material respect shall constitute an Event of Default pursuant to the Loan Documents.

6.     **Reaffirmation of Loan Documents.** Except as expressly stated in this Amendment, the Note, the Loan Agreement, the Guaranty, and the other Loan Documents shall be and remain in full force and effect, without modification, and Borrower and Guarantor hereby ratify and reaffirm their respective Obligations, as so amended by this Amendment. This Amendment constitutes a "Loan Document" for all purposes of the definition of Loan Documents. The execution and delivery of this Amendment is not to be interpreted or construed as, and in fact does not constitute, a novation, payment, or satisfaction of all or any portion of the Loan or any other Obligations; rather, this Amendment is strictly amendatory in nature. The Loan and the other Obligations continue to be secured by the Collateral, as amended herein, without change in nature, amount, or priority. Borrower and Guarantor ratify and reaffirm all the provisions of the Loan Documents, except as expressly amended by this Amendment. Notwithstanding anything to the contrary herein, this Amendment will not be construed or deemed as a limitation or release of Lender's available rights and remedies under the Loan Documents, at law or in equity, in connection with any default or event of default whether now existing or hereafter occurring.

7.     **Release of Claims by Obligors.** Obligors, each for themselves and on behalf of their respective agents, employees, representatives, affiliates, predecessors-in-interest, successors, and assigns (such persons and entities other than Borrower are referred to collectively as the "**Other Releasors**"), do hereby release, discharge and acquit Lender, and its officers, directors, shareholders, agents, employees, and affiliates, and their respective successors, heirs and assigns (collectively, the "**Released Parties**"), of and from any and all rights, claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, causes of action, promises, damages, costs, losses and expenses of every kind, nature, description or character, and irrespective of how,

why, or by reason of what facts, which could or may be claimed to exist, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, arising prior to the execution of this Amendment (collectively, the "**Claims**"), which in any way arise out of, are connected with or relate to any or all of the following: (a) the Loan or the administration of the Loan, as well as any action or inaction of the Released Parties or any of them with respect to the Loan or the administration thereof; (b) any or all of the transactions which are the subject of or contemplated by any or all of the Loan Documents; (c) the Collateral for the Loan; or (d) any fact, matter or transaction pertaining to any of the foregoing; provided, however, this release only applies to claims or defenses which exist or existed or could have been asserted based upon any events or conduct occurring as of or prior to the execution of this Amendment by the parties hereto. Obligors and the Other Releasors also each hereby covenant and agree not to make any Claims or to commence a suit, claim or proceeding of any kind or nature, cause, or permit to be prosecuted any of, or to voluntarily assist or cooperate in the prosecution of, any action at law or in equity against the Released Parties or any of them for or on account of the Claims.

8.    **Further Assurances.** Borrower shall promptly correct any defect or error that may be discovered in any Loan Document or in the execution, acknowledgment or recordation of any Loan Document. Promptly upon request by Lender, Borrower also shall do, execute, acknowledge, deliver, record, re-record, file, re-file, register and re-register, any and all deeds, conveyances, mortgages, deeds of trust, trust deeds, assignments, estoppel certificates, financing statements and continuations thereof, notices of assignment, transfers, certificates, assurances and other instruments as Lender may reasonably require from time to time in order: (a) to carry out more effectively the purposes of the Loan Documents; (b) to perfect and maintain the validity, effectiveness and priority of any security interests intended to be created by the Loan Documents; and (c) to better assure, convey, grant, assign, transfer, preserve, protect and confirm unto Lender the rights granted now or hereafter intended to be granted to Lender under any Loan Document or under any other instrument executed in connection with any Loan Document or that Borrower may be or become bound to convey, mortgage or assign to Lender in order to carry out the intention or facilitate the performance of the provisions of any Loan Document. Borrower shall furnish to Lender evidence satisfactory to Lender of every such recording, filing or registration.

9.    **Government Deferral Order.** If any federal, state or local government unit, regulatory agency, or executive issues an order requiring a moratorium, stay, or otherwise imposes a mandatory forbearance, modification, deferral or other limit on the collection of loan payments of any kind during the term of the Loan ("**Government Deferral Order**"), and subject to any such Government Deferral Order, any deferral or similar period required by such Government Deferral Order shall be deemed to run concurrently with the Payment Deferral Period. This includes any change to the payment schedule in which Lender has agreed to collect less than the full principal and interest otherwise due under the original Loan Documents.

10.    **No Commitment to Extend, Modify or Forbear.** EXCEPT AS SPECIFICALLY PROVIDED IN THIS AMENDMENT, LENDER IS NOT COMMITTED, AND IS NOT COMMITTING AT THIS TIME, TO EXTEND, MODIFY OR OTHERWISE RESTRUCTURE ANY LOAN, OR FORBEAR FROM EXERCISING ANY OF ITS RIGHTS OR REMEDIES UNDER THE LOAN DOCUMENTS, AS AMENDED BY THIS AMENDMENT. NO PRIOR COURSE OF DEALING, NO USAGE OF TRADE, AND NO ORAL STATEMENTS OR COMMENTS BY LENDER OR ITS OFFICERS, EMPLOYEES, ATTORNEYS OR OTHER AGENTS WILL BE DEEMED TO BE A COMMITMENT BY LENDER TO EXTEND, MODIFY, OR OTHERWISE RESTRUCTURE ANY LOAN OR FORBEAR FROM EXERCISING ANY OF ITS RIGHTS OR REMEDIES, EXCEPT AS EXPRESSLY SET FORTH IN THIS AMENDMENT, OR UNLESS THE SAME SHALL BE REDUCED IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF LENDER.



11.  **Event of Default**. If any Obligor fails to perform when due any of its obligations under this Amendment, and such failure continues to exist five (5) business days after written notice thereof to the applicable Obligor(s), then such failure to perform shall constitute an Event of Default under the Loan Documents without further notice, action or demand by Lender, and Lender's agreement to forbear from exercising its rights and remedies under the Note and other Loan Documents shall immediately terminate, without further notice or demand, and Lender may, at its option, accelerate the Note and/or exercise any and all other rights and remedies available to it under the Loan Documents, at law or in equity.

12.  **Counterpart and Electronic Signatures**. This Amendment may be issued, executed and then delivered via facsimile transmission, by sending PDF or other copies hereof via email or other electronic means and in one or more counterparts, each of which shall be (i) an original, and all of the counterparts of which taken together shall constitute one and the same agreement, (ii) a valid and binding agreement and fully admissible under state and federal rules of evidence and (iii) enforceable under UCC Section 3-309, UCC Section 3-604, or any other similar statute (with any provision thereunder to the contrary being waived hereby), without regard to any loss or destruction of any written counterpart hereof, the parties hereto agreeing that the possession or maintenance of an executed and delivered, scanned, electronic or digital version hereof shall constitute possession hereof, and shall not constitute the destruction hereof and shall not result in the discharge of any obligation evidenced hereby, notwithstanding UCC Section 3-604 or any other similar statute. If this is a promissory note and issued via electronic signature in electronic format it shall also constitute a "transferable record" under UETA and/or ESIGN or other equivalent, applicable law.

**[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY;<br>SIGNATURES CONTAINED ON FOLLOWING PAGES]**



**IN WITNESS WHEREOF**, this Amendment has been duly executed and delivered by the parties hereto under seal as of the date of Borrower's execution indicated below.

*Borrower*:

**L N HOSPITALITY CLEVELAND LLC,** an Ohio limited liability company

By: _____ [Seal]

Print Name: Bharathbhai C. Patel

Its: Managing Member

Date: October 6, 2020

**L N PARKING CLEVELAND LLC,** an Ohio limited liability company

By: _____ [Seal]

Print Name: Bharathbhai C. Patel

Its: Managing Member

Date: October 6, 2020

*[Signatures continue on the next page]*

Guarantor hereby consents and agrees to the provisions of this Amendment and agrees that the Guaranty and the Pledge Agreement previously executed by Guarantor, as the case may be, shall continue in full force as provided therein. Guarantor, by executing this Amendment, hereby assents to the terms and conditions of this Amendment, and ratifies and reaffirms the terms and conditions of the Guaranty and the Pledge Agreement, which Guaranty and Pledge Agreement shall remain in full force and effect.

*Guarantor/Pledgor:*

**BHARATHBAI PATEL**

Date: October 6, 2020

*[Signatures continue on the next page]*

*Lender:*

**APF – CPX II, LLC,**
a Delaware limited liability company

By: **ACCESS POINT FINANCIAL, LLC**, a
Delaware limited liability company, as loan
servicer for Lender

By: _____ [Seal]
Dilip R. Petigara
Chief Executive Officer

**EXHIBIT "J"**



404.382.9599 · accesspointfinancial.com          One Ravinia Drive, 9th Floor I Atlanta, Georgia 30346

July 16, 2020

L N HOSPITALITY CLEVELAND LLC
5300 RIVERSIDE DRIVE
CLEVELAND, OH
44135

RE: Past Due Payment
Asset Number: #7065601

Reference is made to that certain loan in the original principal amount of 5,000,000.00 USD (the "Loan") evidenced by that certain note dated as of 15-Apr-2019 by L N HOSPITALITY CLEVELAND LLC (the Note, together with each other documents and/or instruments evidencing, securing, governing, guarantying or otherwise relating to the Loan, the "Loan Documents").

We are writing to you in our capacity as servicer of the Loan to notify you that your payment due 01-Jul-2020 has not been received or partially satisfied and is now past due. This letter serves as formal notice and demand that Borrower immediately pay any and all sums that remain due and payable under the Loan.

Please forward your payment immediately using one of the methods below:

**WIRING INSTRUCTIONS :**

| | |
|---|---|
| Bank: | Wells Fargo Bank, N.A. |
| | 333 Market Street, 18th Floor |
| | San Francisco, CA 94105 |
| ABA# | ▉▉▉▉▉▉ |
| Credit: | Trimont Real Estate Advisors, LLC |
| | Custodial Deposit Clearing Account |
| Account# | ▉▉▉▉▉▉ |
| Reference: | #7065601 |

**CHECK PAYMENTS**

Trimont Real Estate Advisors LLC
P.O. BOX 931269
Atlanta, GA 31193-1269

---



**If you have already sent your payment, please disregard this letter.**

      Notwithstanding the acceptance of the Partial Payment or any other partial payments at any time by Holder (or any servicer acting on its behalf), the Loan remains in default. No acceptance by Holder (or any servicer acting on its behalf) of the Partial Payment or any other partial payments shall be deemed or construed as a waiver any defaults described in this letter or otherwise existing under the Loan and/or the Loan Documents. Acceptance of the Partial Payment does not imply that any future partial payments will be accepted by Holder (or any servicer acting on its behalf), and shall not be deemed to be a waiver of Holder's right to reject partial payments, assess late charges, charge a default rate of interest, or to prevent Holder from exercising any right, remedy, or power available to Holder, including, without limitation, all rights, remedies, and powers granted under the Loan Documents and at law or in equity. Further, no failure to exercise or delay in exercising any right, remedy, power or privilege of Holder under the Loan Documents shall operate as a waiver, forbearance or postponement thereof, all of which are hereby expressly reserved.

      This written notice is being transmitted as a courtesy to you, and is not intended as an admission that any written notice is otherwise required. The only agreements that exist between Holder and Borrower are those set forth in the Loan Documents, which may only be amended by agreement of the parties in writing.

      Please be advised that the delivery of this letter shall not be deemed to constitute a waiver by lender of any of lender's rights or remedies under the Loan Documents. No failure or delay on the part of the lender in exercising any right or remedy shall operate as a waiver of any or such rights or remedies. Nothing contained in this letter is intended to create or constitute, or shall be deemed to be, a waiver, modification, relinquishment or forbearance by either servicer on behalf of lender or by lender of any of lender's rights and remedies under applicable law or the Loan Documents, including without limitation, any and all rights or remedies in connection with any defaults that may now or hereafter exist under the Loan Documents, all of which rights and remedies are hereby expressly reserved.

Sincerely,

Authorized Representative

Access Point Financial, as Lender

# EXHIBIT "K"



404 382 9599 · accesspointfinancial.com                One Ravinia Drive, 9th Floor I Atlanta, Georgia 30346

August 13, 2020

L N HOSPITALITY CLEVELAND LLC
5300 RIVERSIDE DRIVE
CLEVELAND, OH
44135

RE: Past Due Payment
Asset Number: #7065601

Reference is made to that certain loan in the original principal amount of 5,000,000.00 USD (the "Loan") evidenced by that certain note dated as of 15-Apr-2019 by L N HOSPITALITY CLEVELAND LLC (the Note, together with each other documents and/or instruments evidencing, securing, governing, guarantying or otherwise relating to the Loan, the "Loan Documents").

We are writing to you in our capacity as servicer of the Loan to notify you that your payment due 01-Jul-2020 has not been received or partially satisfied and is now past due. This letter serves as formal notice and demand that Borrower immediately pay any and all sums that remain due and payable under the Loan.

Please forward your payment immediately using one of the methods below:

**WIRING INSTRUCTIONS :**

| | |
|---|---|
| Bank: | Wells Fargo Bank, N.A. |
| | 333 Market Street, 18th Floor |
| | San Francisco, CA 94105 |
| ABA# | ███████ |
| Credit: | Trimont Real Estate Advisors, LLC |
| | Custodial Deposit Clearing Account |
| Account# | ███████ |
| Reference: | #7065601 |

**CHECK PAYMENTS**

Trimont Real Estate Advisors LLC
P.O. BOX 931269
Atlanta, GA 31193-1269



404 382 9599 · accesspointfinancial.com      One Ravinia Drive, 9th Floor I Atlanta, Georgia 30346

**If you have already sent your payment, please disregard this letter.**

Notwithstanding the acceptance of the Partial Payment or any other partial payments at any time by Holder (or any servicer acting on its behalf), the Loan remains in default. No acceptance by Holder (or any servicer acting on its behalf) of the Partial Payment or any other partial payments shall be deemed or construed as a waiver any defaults described in this letter or otherwise existing under the Loan and/or the Loan Documents. Acceptance of the Partial Payment does not imply that any future partial payments will be accepted by Holder (or any servicer acting on its behalf), and shall not be deemed to be a waiver of Holder's right to reject partial payments, assess late charges, charge a default rate of interest, or to prevent Holder from exercising any right, remedy, or power available to Holder, including, without limitation, all rights, remedies, and powers granted under the Loan Documents and at law or in equity. Further, no failure to exercise or delay in exercising any right, remedy, power or privilege of Holder under the Loan Documents shall operate as a waiver, forbearance or postponement thereof, all of which are hereby expressly reserved.

This written notice is being transmitted as a courtesy to you, and is not intended as an admission that any written notice is otherwise required. The only agreements that exist between Holder and Borrower are those set forth in the Loan Documents, which may only be amended by agreement of the parties in writing.

Please be advised that the delivery of this letter shall not be deemed to constitute a waiver by lender of any of lender's rights or remedies under the Loan Documents. No failure or delay on the part of the lender in exercising any right or remedy shall operate as a waiver of any or such rights or remedies. Nothing contained in this letter is intended to create or constitute, or shall be deemed to be, a waiver, modification, relinquishment or forbearance by either servicer on behalf of lender or by lender of any of lender's rights and remedies under applicable law or the Loan Documents, including without limitation, any and all rights or remedies in connection with any defaults that may now or hereafter exist under the Loan Documents, all of which rights and remedies are hereby expressly reserved.

Sincerely,

Authorized Representative

Access Point Financial, as Lender

**EXHIBIT "L"**

 **ACCESSPOINT** F I N A N C I A L

*The Name to Know in* **Hotel Finance**

September 15, 2020

L N HOSPITALITY CLEVELAND LLC
5300 RIVERSIDE DRIVE
CLEVELAND, OH
44135

RE: Past Due Payment
Asset Number: #7065601

Reference is made to that certain loan in the original principal amount of 5,000,000.00 USD (the "Loan") evidenced by that certain note dated as of 15-Apr-2019 by L N HOSPITALITY CLEVELAND LLC (the Note, together with each other documents and/or instruments evidencing, securing, governing, guarantying or otherwise relating to the Loan. the "Loan Documents").

We are writing to you in our capacity as servicer of the Loan to notify you that your payment due 01-Jul-2020 has not been received or partially satisfied and is now past due. This letter serves as formal notice and demand that Borrower immediately pay any and all sums that remain due and payable under the Loan.

Please forward your payment immediately using one of the methods below:

**WIRING INSTRUCTIONS :**

| | |
|---|---|
| Bank: | Wells Fargo Bank, N.A. |
| | 333 Market Street, 18th Floor |
| | San Francisco, CA 94105 |
| ABA# | ████████ |
| Credit: | Trimont Real Estate Advisors, LLC |
| | Custodial Deposit Clearing Account |
| Account# | ████████ |
| Reference: | #7065601 |

**CHECK PAYMENTS**

Trimont Real Estate Advisors LLC
P.O. BOX 931269
Atlanta, GA 31193-1269



*The Name to Know in* **Hotel Finance**

404 382 9599    accesspointfinancial.com                         One Ravinia Drive, 9th Floor I Atlanta, Georgia 30346

**If you have already sent your payment, please disregard this letter.**

Notwithstanding the acceptance of the Partial Payment or any other partial payments at any time by Holder (or any servicer acting on its behalf), the Loan remains in default. No acceptance by Holder (or any servicer acting on its behalf) of the Partial Payment or any other partial payments shall be deemed or construed as a waiver any defaults described in this letter or otherwise existing under the Loan and/or the Loan Documents. Acceptance of the Partial Payment does not imply that any future partial payments will be accepted by Holder (or any servicer acting on its behalf), and shall not be deemed to be a waiver of Holder's right to reject partial payments, assess late charges, charge a default rate of interest, or to prevent Holder from exercising any right, remedy, or power available to Holder, including, without limitation, all rights, remedies, and powers granted under the Loan Documents and at law or in equity. Further, no failure to exercise or delay in exercising any right, remedy, power or privilege of Holder under the Loan Documents shall operate as a waiver, forbearance or postponement thereof, all of which are hereby expressly reserved.

This written notice is being transmitted as a courtesy to you, and is not intended as an admission that any written notice is otherwise required. The only agreements that exist between Holder and Borrower are those set forth in the Loan Documents, which may only be amended by agreement of the parties in writing.

Please be advised that the delivery of this letter shall not be deemed to constitute a waiver by lender of any of lender's rights or remedies under the Loan Documents. No failure or delay on the part of the lender in exercising any right or remedy shall operate as a waiver of any or such rights or remedies. Nothing contained in this letter is intended to create or constitute, or shall be deemed to be, a waiver, modification, relinquishment or forbearance by either servicer on behalf of lender or by lender of any of lender's rights and remedies under applicable law or the Loan Documents, including without limitation, any and all rights or remedies in connection with any defaults that may now or hereafter exist under the Loan Documents, all of which rights and remedies are hereby expressly reserved.

Sincerely,

Authorized Representative

Access Point Financial, as Lender

**EXHIBIT "M"**

# SECOND AMENDMENT TO COVID-19 FORBEARANCE AGREEMENT

**THIS SECOND AMENDMENT TO COVID-19 FORBEARANCE AGREEMENT** (this "***Amendment***") is dated as of October 1 2020 (the "***Effective Date***"), by and among **L N HOSPITALITY CLEVELAND LLC**, an Ohio limited liability company, and **L N PARKING CLEVELAND LLC**, an Ohio limited liability company (collectively, the "***Borrower***"), **BHARATHBHAI PATEL**, an individual resident of the State of California(the "***Guarantor***" and/or "***Pledgor***" as applicable), (Borrower, Guarantor and Pledgor are hereinafter collectively referred to as the "***Obligors***"), and **ACCESS POINT FINANCIAL, LLC**, a Delaware limited liability company (f/k/a Access Point Financial, Inc., a Delaware corporation; "**Access Point**"), as loan servicer for **APF – CPX II, LLC**, a Delaware limited liability company ("***Lender***").

## RECITALS:

A.  **PRIOR AGREEMENT**. Obligors and Lender have previously entered into that certain COVID-19 Forbearance Agreement dated April 1, 2020, as amended by that certain First Amendment to COVID-19 Forbearance Agreement dated July 1, 2020 (hereinafter collectively referred to as the "**Forbearance Agreement**").

B.  **REQUEST**. Obligors wish to amend the Forbearance Agreement to extend Lender's forbearance from the collection of the monthly payments of principal and fifty percent (50%) of the monthly payments of interest for an additional six months. Lender is willing to grant the requested extension on the terms and conditions set forth in this Amendment.

**NOW, THEREFORE**, Obligors represent and warrant to Lender and agree with Lender, and Lender agrees with Obligors, as follows:

1.  **Capitalized Terms**. Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Forbearance Agreement.

2.  **AMENDMENT TO FORBEARANCE AGREEMENT**.

a.  Paragraph 2 of the Forbearance Agreement is hereby deleted in its entirety and replaced with the following:

"2. **Payment Deferral and Forbearance Request**. Although Borrower's payments under the Loan Documents were less than thirty (30) days past due on March 31, 2020, as a consequence of the negative impact from the Coronavirus Disease 2019 (also known as COVID-19), Obligors informed Lender that they did not have sufficient resources to make payments due under the Note as and when they came due and requested that Lender forbear from collection of all monthly payments due under the Loan Documents of interest and principal commencing April 1, 2020, and expiring (without demand or notice from Lender) on June 30, 2020 (the "**Initial Payment Deferral Period**"). Lender granted Borrower's principal and interest forbearance request during the Initial Payment Deferral Period. Additionally, although Borrower's payments under the Loan Documents remained less than thirty (30) days past due on June 30, 2020, as a consequence of the continuing negative impact from the Coronavirus Disease 2019 (also known as COVID-19), Obligors informed Lender that they still did not have sufficient resources to make full payments due under the Note as and when they came due and requested that Lender forbear from the collection of monthly payments of principal and fifty percent (50%) of the monthly payments of interest commencing July 1, 2020 and expiring (without demand or notice from Lender) on September 30, 2020 (the "**Second Payment Deferral Period**"). Lender granted Borrower's forbearance request during the Second Payment Deferral Period. Although Borrower's payments under the Loan Documents, as previously amended, were less than thirty (30) days past due on September 30, 2020, as a consequence of the continuing negative impact from the Coronavirus Disease 2019 (also known

as COVID-19), Obligors have informed Lender that they still do not have sufficient resources to make payments due under the Note as and when they come due and have requested that Lender continue to forbear from the collection of monthly payments of principal and fifty percent (50%) of the monthly interest commencing October 1, 2020 and expiring (without demand or notice from Lender) on March 31, 2021 (the "**Third Payment Deferral Period**"). The Initial Payment Deferral Period, the Second Payment Deferral Period and the Third Payment Deferral Period are collectively referred to in this Amendment as the "**Payment Deferral Period**." The Obligors shall also pay to Lender any past due payment of interest that was incurred, but not paid, during the Payment Deferral Period. No notice or cure period shall be required or afforded for such Non-Deferred Interest, notwithstanding anything in the Forbearance Agreement or this Amendment to the contrary. Lender is willing to grant the requested forbearance request, but only upon the terms and conditions set forth in the Forbearance Agreement and this Amendment. The Parties have entered into this Amendment to evidence their agreement regarding the modifications to the Loan Documents and the conditions applicable thereto."

b.     Paragraph 5 of the Forbearance Agreement is hereby deleted in its entirety and replaced with the following:

"5. **Loan Payment Deferral**. Pursuant to Borrower's request, during the Payment Deferral Period, if the payments of principal, interest, or both, normally due and owing under the Note are not paid as and when due, the Borrower shall be deemed to have received an advance under the applicable Note in the amount of the interest otherwise due (each instance a "**Loan Interest Advance**"). Once deemed advanced, interest shall accrue on each Loan Interest Advance under this Amendment (and has been accruing on each Loan Interest Advance originally made under the Forbearance Agreement) at the applicable Note rate, and is compounded monthly until paid in full. Upon expiration of the Payment Deferral Period, monthly payments under the Note will resume according to the terms of the Note and all Loan Interest Advances shall be paid in full upon maturity of the Note. If prior to the Effective Date, the Note provided for the Borrower to make payments of principal and interest at any time during the Payment Deferral Period, then such payments shall commence (or resume, as the case may be) on the first regularly scheduled payment date under the Note immediately following the expiration of the Payment Deferral Period. Borrower may prepay all Loan Interest Advances, and any other payments deferred under the terms of this Agreement, at any time without an obligation to pay Lender any prepayment consideration that would otherwise be due under the Loan Documents. No provision of this Agreement amends, extends or otherwise postpones the maturity date of the Loan."

3.     **Intentionally Omitted**.

4.     **Conditions Precedent**. Lender's agreement to forbear (as modified by this Amendment) shall not be effective unless (and shall only remain effective if) all of the following conditions precedent are satisfied as and when provided in this Amendment:

    a.  Borrower, Guarantor, Pledgor and Lender shall have duly executed and delivered an original counterpart of this Amendment; and

    b.  Upon execution hereof, Obligors shall pay Lender, in immediately available funds, the amount of One Thousand Five Hundred and 00/100 Dollars ($1,500.00) for Attorney's Fees incurred by Lender in connection with the preparation of this Amendment.

5.     **Representations and Warranties**. As a material inducement to Lender to agree to enter into this Amendment, Obligors represent and warrant to Lender that:

(a)     This Amendment and the other Forbearance Documents constitute a valid and legally

binding obligation of each Obligor (to the extent a party thereto) enforceable in accordance with their respective terms and do not violate, conflict with, or constitute any default under any law or regulation binding on or applicable to any Obligor's organizational documents, or any mortgage, lease, credit, loan agreement, contract, or other instrument binding upon or affecting any Obligor;

(b) Excluding Loan payments deferred pursuant to this Amendment, no default or Event of Default under the Loan Documents exists as of the date hereof;

(c) Lender has fully and timely performed all of its obligations and duties in compliance with the Loan Documents and applicable law, and has acted reasonably, in good faith and appropriately under the circumstances; and

(d) No setoffs, defenses, claims, counterclaims or recoupment of any nature whatsoever on the part of any Obligor to payment or performance of such Obligor's obligations under the Loan Documents (collectively, the "**Obligations**") as modified pursuant to this Amendment and the other Forbearance Documents, exists as of the date hereof.

Obligors agree that the falsity or inaccuracy of any of the foregoing representations and warranties in any material respect shall constitute an Event of Default pursuant to the Loan Documents.

6. <u>**Reaffirmation of Loan Documents**</u>. Except as expressly stated in this Amendment, the Note, the Loan Agreement, the Guaranty, and the other Loan Documents shall be and remain in full force and effect, without modification, and Borrower and Guarantor hereby ratify and reaffirm their respective Obligations, as so amended by this Amendment. This Amendment constitutes a "Loan Document" for all purposes of the definition of Loan Documents. The execution and delivery of this Amendment is not to be interpreted or construed as, and in fact does not constitute, a novation, payment, or satisfaction of all or any portion of the Loan or any other Obligations; rather, this Amendment is strictly amendatory in nature. The Loan and the other Obligations continue to be secured by the Collateral, as amended herein, without change in nature, amount, or priority. Borrower and Guarantor ratify and reaffirm all the provisions of the Loan Documents, except as expressly amended by this Amendment. Notwithstanding anything to the contrary herein, this Amendment will not be construed or deemed as a limitation or release of Lender's available rights and remedies under the Loan Documents, at law or in equity, in connection with any default or event of default whether now existing or hereafter occurring.

7. <u>**Release of Claims by Obligors**</u>. Obligors, each for themselves and on behalf of their respective agents, employees, representatives, affiliates, predecessors-in-interest, successors, and assigns (such persons and entities other than Borrower are referred to collectively as the "**Other Releasors**"), do hereby release, discharge and acquit Lender, and its officers, directors, shareholders, agents, employees, and affiliates, and their respective successors, heirs and assigns (collectively, the "**Released Parties**"), of and from any and all rights, claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, causes of action, promises, damages, costs, losses and expenses of every kind, nature, description or character, and irrespective of how, why, or by reason of what facts, which could or may be claimed to exist, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, arising prior to the execution of this Amendment (collectively, the "**Claims**"), which in any way arise out of, are connected with or relate to any or all of the following: (a) the Loan or the administration of the Loan, as well as any action or inaction of the Released Parties or any of them with respect to the Loan or the administration thereof; (b) any or all of the transactions which are the subject of or contemplated by any or all of the Loan Documents; (c) the Collateral for the Loan; or (d) any fact, matter or transaction pertaining to any of the foregoing; provided, however, this release only applies to claims or defenses which exist or existed or could have been asserted based upon any events or conduct occurring as of or prior to the execution of this Amendment by the parties hereto. Obligors and the Other Releasors also each hereby

covenant and agree not to make any Claims or to commence a suit, claim or proceeding of any kind or nature, cause, or permit to be prosecuted any of, or to voluntarily assist or cooperate in the prosecution of, any action at law or in equity against the Released Parties or any of them for or on account of the Claims.

8. **Further Assurances.** Borrower shall promptly correct any defect or error that may be discovered in any Loan Document or in the execution, acknowledgment or recordation of any Loan Document. Promptly upon request by Lender, Borrower also shall do, execute, acknowledge, deliver, record, re-record, file, re-file, register and re-register, any and all deeds, conveyances, mortgages, deeds of trust, trust deeds, assignments, estoppel certificates, financing statements and continuations thereof, notices of assignment, transfers, certificates, assurances and other instruments as Lender may reasonably require from time to time in order: (a) to carry out more effectively the purposes of the Loan Documents; (b) to perfect and maintain the validity, effectiveness and priority of any security interests intended to be created by the Loan Documents; and (c) to better assure, convey, grant, assign, transfer, preserve, protect and confirm unto Lender the rights granted now or hereafter intended to be granted to Lender under any Loan Document or under any other instrument executed in connection with any Loan Document or that Borrower may be or become bound to convey, mortgage or assign to Lender in order to carry out the intention or facilitate the performance of the provisions of any Loan Document. Borrower shall furnish to Lender evidence satisfactory to Lender of every such recording, filing or registration.

9. **Government Deferral Order**. If any federal, state or local government unit, regulatory agency, or executive issues an order requiring a moratorium, stay, or otherwise imposes a mandatory forbearance, modification, deferral or other limit on the collection of loan payments of any kind during the term of the Loan ("**Government Deferral Order**"), and subject to any such Government Deferral Order, any deferral or similar period required by such Government Deferral Order shall be deemed to run concurrently with the Payment Deferral Period. This includes any change to the payment schedule in which Lender has agreed to collect less than the full principal and interest otherwise due under the original Loan Documents.

10. **No Commitment to Extend, Modify or Forbear.** EXCEPT AS SPECIFICALLY PROVIDED IN THIS AMENDMENT, LENDER IS NOT COMMITTED, AND IS NOT COMMITTING AT THIS TIME, TO EXTEND, MODIFY OR OTHERWISE RESTRUCTURE ANY LOAN, OR FORBEAR FROM EXERCISING ANY OF ITS RIGHTS OR REMEDIES UNDER THE LOAN DOCUMENTS, AS AMENDED BY THIS AMENDMENT. NO PRIOR COURSE OF DEALING, NO USAGE OF TRADE, AND NO ORAL STATEMENTS OR COMMENTS BY LENDER OR ITS OFFICERS, EMPLOYEES, ATTORNEYS OR OTHER AGENTS WILL BE DEEMED TO BE A COMMITMENT BY LENDER TO EXTEND, MODIFY, OR OTHERWISE RESTRUCTURE ANY LOAN OR FORBEAR FROM EXERCISING ANY OF ITS RIGHTS OR REMEDIES, EXCEPT AS EXPRESSLY SET FORTH IN THIS AMENDMENT, OR UNLESS THE SAME SHALL BE REDUCED IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF LENDER.

11. **Event of Default**. If any Obligor fails to perform when due any of its obligations under this Amendment, and such failure continues to exist five (5) business days after written notice thereof to the applicable Obligor(s), then such failure to perform shall constitute an Event of Default under the Loan Documents without further notice, action or demand by Lender, and Lender's agreement to forbear from exercising its rights and remedies under the Note and other Loan Documents shall immediately terminate, without further notice or demand, and Lender may, at its option, accelerate the Note and/or exercise any and all other rights and remedies available to it under the Loan Documents, at law or in equity.

12. **Counterpart and Electronic Signatures**. This Amendment may be issued, executed and then delivered via facsimile transmission, by sending PDF or other copies hereof via email or other electronic means and in one or more counterparts, each of which shall be (i) an original, and all of the counterparts of which taken together shall constitute one and the same agreement, (ii) a valid and binding agreement and fully admissible under state and federal rules of evidence and (iii) enforceable under UCC Section 3-309, UCC Section 3-604, or any other similar statute (with any provision thereunder to the

contrary being waived hereby), without regard to any loss or destruction of any written counterpart hereof, the parties hereto agreeing that the possession or maintenance of an executed and delivered, scanned, electronic or digital version hereof shall constitute possession hereof, and shall not constitute the destruction hereof and shall not result in the discharge of any obligation evidenced hereby, notwithstanding UCC Section 3-604 or any other similar statute. If this is a promissory note and issued via electronic signature in electronic format it shall also constitute a "transferable record" under UETA and/or ESIGN or other equivalent, applicable law.

**[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY; SIGNATURES CONTAINED ON FOLLOWING PAGES]**

**IN WITNESS WHEREOF**, this Amendment has been duly executed and delivered by the parties hereto under seal as of the date of Borrower's execution indicated below.

*Borrower*:

**L N HOSPITALITY CLEVELAND** LLC,
an Ohio limited liability company

By:_____[Seal]
Print Name:___Bharathbhai Patel_____
Its:_____Managing member_____

**L N PARKING CLEVELAND LLC,**
an Ohio limited liability company

By:_____[Seal]
Print Name:___Bharathbhai Patel_____
Its:_____Managing member_____

*[Signatures continue on the next page]*

Guarantor hereby consents and agrees to the provisions of this Amendment and agrees that the Guaranty and the Pledge Agreement previously executed by Guarantor, as the case may be, shall continue in full force as provided therein. Guarantor, by executing this Amendment, hereby assents to the terms and conditions of this Amendment, and ratifies and reaffirms the terms and conditions of the Guaranty and the Pledge Agreement, which Guaranty and Pledge Agreement shall remain in full force and effect.

Guarantor/Pledgor
:

**BHARATHBAI PATEL**

Date: December 30 , 2020

*[Signatures continue on the next page]*

*Lender:*

**APF – CPX II, LLC,**

a Delaware limited liability company

By:      **ACCESS POINT FINANCIAL, LLC,**
a Delaware limited liability company, as
loan servicer for Lender

By: _____ [Seal]
Dilip R. Petigara,
Chief Executive Officer

**EXHIBIT "N"**



404 382 9599 · accesspointfinancial.com          One Ravinia Drive, 9th Floor I Atlanta, Georgia 30346

October 14, 2020

L N HOSPITALITY CLEVELAND LLC
5300 RIVERSIDE DRIVE
CLEVELAND, OH
44135

RE: Past Due Payment
Asset Number: #7065601

Reference is made to that certain loan in the original principal amount of 5,000,000.00 USD (the "Loan") evidenced by that certain note dated as of 15-Apr-2019 by L N HOSPITALITY CLEVELAND LLC (the Note, together with each other documents and/or instruments evidencing, securing, governing, guarantying or otherwise relating to the Loan, the "Loan Documents").

We are writing to you in our capacity as servicer of the Loan to notify you that your payment due 03-Aug-2020 has not been received or partially satisfied and is now past due. This letter serves as formal notice and demand that Borrower immediately pay any and all sums that remain due and payable under the Loan.

Please forward your payment immediately using one of the methods below:

**WIRING INSTRUCTIONS :**

Bank:        Wells Fargo Bank, N.A.
             333 Market Street, 18th Floor
             San Francisco, CA 94105
ABA#
Credit:      Trimont Real Estate Advisors, LLC
             Custodial Deposit Clearing Account
Account#
Reference:   #7065601

**CHECK PAYMENTS**

Trimont Real Estate Advisors LLC
P.O. BOX 931269
Atlanta, GA 31193-1269



**If you have already sent your payment, please disregard this letter.**

    Notwithstanding the acceptance of the Partial Payment or any other partial payments at any time by Holder (or any servicer acting on its behalf), the Loan remains in default. No acceptance by Holder (or any servicer acting on its behalf) of the Partial Payment or any other partial payments shall be deemed or construed as a waiver any defaults described in this letter or otherwise existing under the Loan and/or the Loan Documents. Acceptance of the Partial Payment does not imply that any future partial payments will be accepted by Holder (or any servicer acting on its behalf), and shall not be deemed to be a waiver of Holder's right to reject partial payments, assess late charges, charge a default rate of interest, or to prevent Holder from exercising any right, remedy, or power available to Holder, including, without limitation, all rights, remedies, and powers granted under the Loan Documents and at law or in equity. Further, no failure to exercise or delay in exercising any right, remedy, power or privilege of Holder under the Loan Documents shall operate as a waiver, forbearance or postponement thereof, all of which are hereby expressly reserved.

    This written notice is being transmitted as a courtesy to you, and is not intended as an admission that any written notice is otherwise required. The only agreements that exist between Holder and Borrower are those set forth in the Loan Documents, which may only be amended by agreement of the parties in writing.

    Please be advised that the delivery of this letter shall not be deemed to constitute a waiver by lender of any of lender's rights or remedies under the Loan Documents. No failure or delay on the part of the lender in exercising any right or remedy shall operate as a waiver of any or such rights or remedies. Nothing contained in this letter is intended to create or constitute, or shall be deemed to be, a waiver, modification, relinquishment or forbearance by either servicer on behalf of lender or by lender of any of lender's rights and remedies under applicable law or the Loan Documents, including without limitation, any and all rights or remedies in connection with any defaults that may now or hereafter exist under the Loan Documents, all of which rights and remedies are hereby expressly reserved.

Sincerely,

Authorized Representative

Access Point Financial, as Lender

**EXHIBIT "O"**

 **ACCESSPOINT**
FINANCIAL

*The Name to Know in* **Hotel Finance**

404 382 9599 · accesspointfinancial.com

One Ravinia Drive, 9th Floor | Atlanta, Georgia 30346

November 17, 2020

L N HOSPITALITY CLEVELAND LLC
5300 RIVERSIDE DRIVE
CLEVELAND, OH
44135

RE: Past Due Payment
Asset Number: #7065601

Reference is made to that certain loan in the original principal amount of 5,000,000.00 USD (the "Loan") evidenced by that certain note dated as of 15-Apr-2019 by L N HOSPITALITY CLEVELAND LLC (the Note, together with each other documents and/or instruments evidencing, securing, governing, guarantying or otherwise relating to the Loan, the "Loan Documents").

We are writing to you in our capacity as servicer of the Loan to notify you that your payment due 03-Aug-2020 has not been received or partially satisfied and is now past due. This letter serves as formal notice and demand that Borrower immediately pay any and all sums that remain due and payable under the Loan.

Please forward your payment immediately using one of the methods below:

**WIRING INSTRUCTIONS :**

Bank:        Wells Fargo Bank, N.A.
             333 Market Street, 18th Floor
             San Francisco, CA 94105
ABA#         ████████
Credit:      Trimont Real Estate Advisors, LLC
             Custodial Deposit Clearing Account
Account#     ████████
Reference:   #7065601

**CHECK PAYMENTS**

Trimont Real Estate Advisors LLC
P.O. BOX 931269
Atlanta, GA 31193-1269

**ATLANTA | BUFFALO | BOSTON | NASHVILLE | MINNEAPOLIS | WASHINGTON DC**



**If you have already sent your payment, please disregard this letter.**

Notwithstanding the acceptance of the Partial Payment or any other partial payments at any time by Holder (or any servicer acting on its behalf), the Loan remains in default. No acceptance by Holder (or any servicer acting on its behalf) of the Partial Payment or any other partial payments shall be deemed or construed as a waiver any defaults described in this letter or otherwise existing under the Loan and/or the Loan Documents. Acceptance of the Partial Payment does not imply that any future partial payments will be accepted by Holder (or any servicer acting on its behalf), and shall not be deemed to be a waiver of Holder's right to reject partial payments, assess late charges, charge a default rate of interest, or to prevent Holder from exercising any right, remedy, or power available to Holder, including, without limitation, all rights, remedies, and powers granted under the Loan Documents and at law or in equity. Further, no failure to exercise or delay in exercising any right, remedy, power or privilege of Holder under the Loan Documents shall operate as a waiver, forbearance or postponement thereof, all of which are hereby expressly reserved.

This written notice is being transmitted as a courtesy to you, and is not intended as an admission that any written notice is otherwise required. The only agreements that exist between Holder and Borrower are those set forth in the Loan Documents, which may only be amended by agreement of the parties in writing.

Please be advised that the delivery of this letter shall not be deemed to constitute a waiver by lender of any of lender's rights or remedies under the Loan Documents. No failure or delay on the part of the lender in exercising any right or remedy shall operate as a waiver of any or such rights or remedies. Nothing contained in this letter is intended to create or constitute, or shall be deemed to be, a waiver, modification, relinquishment or forbearance by either servicer on behalf of lender or by lender of any of lender's rights and remedies under applicable law or the Loan Documents, including without limitation, any and all rights or remedies in connection with any defaults that may now or hereafter exist under the Loan Documents, all of which rights and remedies are hereby expressly reserved.

Sincerely,

Authorized Representative

Access Point Financial, as Lender

**EXHIBIT "P"**



*The Name to Know in* **Hotel Finance**

404.382.9599 · accesspointfinancial.com                          One Ravinia Drive, 9th Floor I Atlanta, Georgia 30346

December 16, 2020

L N HOSPITALITY CLEVELAND LLC
5300 RIVERSIDE DRIVE
CLEVELAND, OH
44135

RE: Past Due Payment
Asset Number: #7065601

Reference is made to that certain loan in the original principal amount of 5,000,000.00 USD (the "Loan") evidenced by that certain note dated as of 15-Apr-2019 by L N HOSPITALITY CLEVELAND LLC (the Note, together with each other documents and/or instruments evidencing, securing, governing, guarantying or otherwise relating to the Loan, the "Loan Documents").

We are writing to you in our capacity as servicer of the Loan to notify you that your payment due 01-Sep-2020 has not been received or partially satisfied and is now past due. This letter serves as formal notice and demand that Borrower immediately pay any and all sums that remain due and payable under the Loan.

Please forward your payment immediately using one of the methods below:

**WIRING INSTRUCTIONS :**

Bank:      Wells Fargo Bank, N.A.
              333 Market Street, 18th Floor
              San Francisco, CA 94105
ABA#     ██████████
Credit:     Trimont Real Estate Advisors, LLC
              Custodial Deposit Clearing Account
Account# ██████████
Reference:  #7065601

**CHECK PAYMENTS**

Trimont Real Estate Advisors LLC
P.O. BOX 931269
Atlanta, GA 31193-1269


If you have already sent your payment, please disregard this letter.

Notwithstanding the acceptance of the Partial Payment or any other partial payments at any time by Holder (or any servicer acting on its behalf), the Loan remains in default. No acceptance by Holder (or any servicer acting on its behalf) of the Partial Payment or any other partial payments shall be deemed or construed as a waiver any defaults described in this letter or otherwise existing under the Loan and/or the Loan Documents. Acceptance of the Partial Payment does not imply that any future partial payments will be accepted by Holder (or any servicer acting on its behalf), and shall not be deemed to be a waiver of Holder's right to reject partial payments, assess late charges, charge a default rate of interest, or to prevent Holder from exercising any right, remedy, or power available to Holder, including, without limitation, all rights, remedies, and powers granted under the Loan Documents and at law or in equity. Further, no failure to exercise or delay in exercising any right, remedy, power or privilege of Holder under the Loan Documents shall operate as a waiver, forbearance or postponement thereof, all of which are hereby expressly reserved.

This written notice is being transmitted as a courtesy to you, and is not intended as an admission that any written notice is otherwise required. The only agreements that exist between Holder and Borrower are those set forth in the Loan Documents, which may only be amended by agreement of the parties in writing.

Please be advised that the delivery of this letter shall not be deemed to constitute a waiver by lender of any of lender's rights or remedies under the Loan Documents. No failure or delay on the part of the lender in exercising any right or remedy shall operate as a waiver of any or such rights or remedies. Nothing contained in this letter is intended to create or constitute, or shall be deemed to be, a waiver, modification, relinquishment or forbearance by either servicer on behalf of lender or by lender of any of lender's rights and remedies under applicable law or the Loan Documents, including without limitation, any and all rights or remedies in connection with any defaults that may now or hereafter exist under the Loan Documents, all of which rights and remedies are hereby expressly reserved.

Sincerely,

Authorized Representative

Access Point Financial, as Lender

**EXHIBIT "Q"**



404.382.9599 · accesspointfinancial.com          One Ravinia Drive, 9th Floor I Atlanta, Georgia 30346

January 13, 2021

L N HOSPITALITY CLEVELAND LLC
5300 RIVERSIDE DRIVE
CLEVELAND, OH
44135

RE: Past Due Payment
Asset Number: #7065601

Reference is made to that certain loan in the original principal amount of 5,000,000.00 USD (the "Loan") evidenced by that certain note dated as of 15-Apr-2019 by L N HOSPITALITY CLEVELAND LLC (the Note, together with each other documents and/or instruments evidencing, securing, governing, guarantying or otherwise relating to the Loan, the "Loan Documents").

We are writing to you in our capacity as servicer of the Loan to notify you that your payment due 02-Nov-2020 has not been received or partially satisfied and is now past due. This letter serves as formal notice and demand that Borrower immediately pay any and all sums that remain due and payable under the Loan.

Please forward your payment immediately using one of the methods below:

**WIRING INSTRUCTIONS :**

Bank:          Wells Fargo Bank, N.A.
               333 Market Street, 18th Floor
               San Francisco, CA 94105
ABA#           ██████████
Credit:        Trimont Real Estate Advisors, LLC
               Custodial Deposit Clearing Account
Account#       ██████████
Reference:     #7065601

**CHECK PAYMENTS**

Trimont Real Estate Advisors LLC
P.O. BOX 931269
Atlanta, GA 31193-1269

**ATLANTA I BUFFALO I BOSTON I NASHVILLE I MINNEAPOLIS I WASHINGTON DC**



**If you have already sent your payment, please disregard this letter.**

Notwithstanding the acceptance of the Partial Payment or any other partial payments at any time by Holder (or any servicer acting on its behalf), the Loan remains in default. No acceptance by Holder (or any servicer acting on its behalf) of the Partial Payment or any other partial payments shall be deemed or construed as a waiver any defaults described in this letter or otherwise existing under the Loan and/or the Loan Documents. Acceptance of the Partial Payment does not imply that any future partial payments will be accepted by Holder (or any servicer acting on its behalf), and shall not be deemed to be a waiver of Holder's right to reject partial payments, assess late charges, charge a default rate of interest, or to prevent Holder from exercising any right, remedy, or power available to Holder, including, without limitation, all rights, remedies, and powers granted under the Loan Documents and at law or in equity. Further, no failure to exercise or delay in exercising any right, remedy, power or privilege of Holder under the Loan Documents shall operate as a waiver, forbearance or postponement thereof, all of which are hereby expressly reserved.

This written notice is being transmitted as a courtesy to you, and is not intended as an admission that any written notice is otherwise required. The only agreements that exist between Holder and Borrower are those set forth in the Loan Documents, which may only be amended by agreement of the parties in writing.

Please be advised that the delivery of this letter shall not be deemed to constitute a waiver by lender of any of lender's rights or remedies under the Loan Documents. No failure or delay on the part of the lender in exercising any right or remedy shall operate as a waiver of any or such rights or remedies. Nothing contained in this letter is intended to create or constitute, or shall be deemed to be, a waiver, modification, relinquishment or forbearance by either servicer on behalf of lender or by lender of any of lender's rights and remedies under applicable law or the Loan Documents, including without limitation, any and all rights or remedies in connection with any defaults that may now or hereafter exist under the Loan Documents, all of which rights and remedies are hereby expressly reserved.

Sincerely,

Authorized Representative

Access Point Financial, as Lender

**EXHIBIT "R"**

 **ACCESSPOINT** FINANCIAL

*The Name to Know in* **Hotel Finance**

404.382.9599 - accesspointfinancial.com        One Ravinia Drive, 9th Floor | Atlanta, Georgia 30346

February 16, 2021

L N HOSPITALITY CLEVELAND LLC
5300 RIVERSIDE DRIVE
CLEVELAND, OH
44135

RE: Past Due Payment
Asset Number: #7065601

Reference is made to that certain loan in the original principal amount of 5,000,000.00 USD (the "Loan") evidenced by that certain note dated as of 15-Apr-2019 by L N HOSPITALITY CLEVELAND LLC (the Note, together with each other documents and/or instruments evidencing, securing, governing, guarantying or otherwise relating to the Loan, the "Loan Documents").

We are writing to you in our capacity as servicer of the Loan to notify you that your payment due 01-Dec-2020 has not been received or partially satisfied and is now past due. This letter serves as formal notice and demand that Borrower immediately pay any and all sums that remain due and payable under the Loan.

Please forward your payment immediately using one of the methods below:

**WIRING INSTRUCTIONS :**

Bank:        Wells Fargo Bank, N.A.
             333 Market Street, 18th Floor
             San Francisco, CA 94105
ABA#         ▓▓▓▓▓▓▓▓
Credit:      Trimont Real Estate Advisors, **LLC**
             Custodial Deposit Clearing Account

Account#     ▓▓▓▓▓▓▓▓
Reference:   #7065601

**CHECK PAYMENTS**

Trimont Real Estate Advisors LLC
P.O. BOX 931269
Atlanta, GA 31193-1269



**If you have already sent your payment, please disregard this letter.**

Notwithstanding the acceptance of the Partial Payment or any other partial payments at any time by Holder (or any servicer acting on its behalf), the Loan remains in default. No acceptance by Holder (or any servicer acting on its behalf) of the Partial Payment or any other partial payments shall be deemed or construed as a waiver any defaults described in this letter or otherwise existing under the Loan and/or the Loan Documents. Acceptance of the Partial Payment does not imply that any future partial payments will be accepted by Holder (or any servicer acting on its behalf), and shall not be deemed to be a waiver of Holder's right to reject partial payments, assess late charges, charge a default rate of interest, or to prevent Holder from exercising any right, remedy, or power available to Holder, including, without limitation, all rights, remedies, and powers granted under the Loan Documents and at law or in equity. Further, no failure to exercise or delay in exercising any right, remedy, power or privilege of Holder under the Loan Documents shall operate as a waiver, forbearance or postponement thereof, all of which are hereby expressly reserved.

This written notice is being transmitted as a courtesy to you, and is not intended as an admission that any written notice is otherwise required. The only agreements that exist between Holder and Borrower are those set forth in the Loan Documents, which may only be amended by agreement of the parties in writing.

Please be advised that the delivery of this letter shall not be deemed to constitute a waiver by lender of any of lender's rights or remedies under the Loan Documents. No failure or delay on the part of the lender in exercising any right or remedy shall operate as a waiver of any or such rights or remedies. Nothing contained in this letter is intended to create or constitute, or shall be deemed to be, a waiver, modification, relinquishment or forbearance by either servicer on behalf of lender or by lender of any of lender's rights and remedies under applicable law or the Loan Documents, including without limitation, any and all rights or remedies in connection with any defaults that may now or hereafter exist under the Loan Documents, all of which rights and remedies are hereby expressly reserved.

Sincerely,

Authorized Representative

Access Point Financial, as Lender

**EXHIBIT "S"**



March 16, 2021

L N HOSPITALITY CLEVELAND LLC
5300 RIVERSIDE DRIVE
CLEVELAND, OH
44135

RE: Past Due Payment
Asset Number: #7065601

Reference is made to that certain loan in the original principal amount of 5,000,000.00 USD (the "Loan") evidenced by that certain note dated as of 15-Apr-2019 by L N HOSPITALITY CLEVELAND LLC (the Note, together with each other documents and/or instruments evidencing, securing, governing, guarantying or otherwise relating to the Loan, the "Loan Documents").

We are writing to you in our capacity as servicer of the Loan to notify you that your payment due 01-Feb-2021 has not been received or partially satisfied and is now past due. This letter serves as formal notice and demand that Borrower immediately pay any and all sums that remain due and payable under the Loan.

Please forward your payment immediately using one of the methods below:

**WIRING INSTRUCTIONS :**

| | |
|---|---|
| Bank: | Wells Fargo Bank, N.A. |
| | 333 Market Street, 18th Floor |
| | San Francisco, CA 94105 |
| ABA# | █████████ |
| Credit: | Trimont Real Estate Advisors, LLC |
| | Custodial Deposit Clearing Account |
| Account# | █████████ |
| Reference: | #7065601 |

**CHECK PAYMENTS**

Trimont Real Estate Advisors LLC
P.O. BOX 931269
Atlanta, GA 31193-1269



**If you have already sent your payment, please disregard this letter.**

Notwithstanding the acceptance of the Partial Payment or any other partial payments at any time by Holder (or any servicer acting on its behalf), the Loan remains in default. No acceptance by Holder (or any servicer acting on its behalf) of the Partial Payment or any other partial payments shall be deemed or construed as a waiver any defaults described in this letter or otherwise existing under the Loan and/or the Loan Documents. Acceptance of the Partial Payment does not imply that any future partial payments will be accepted by Holder (or any servicer acting on its behalf), and shall not be deemed to be a waiver of Holder's right to reject partial payments, assess late charges, charge a default rate of interest, or to prevent Holder from exercising any right, remedy, or power available to Holder, including, without limitation, all rights, remedies, and powers granted under the Loan Documents and at law or in equity. Further, no failure to exercise or delay in exercising any right, remedy, power or privilege of Holder under the Loan Documents shall operate as a waiver, forbearance or postponement thereof, all of which are hereby expressly reserved.

This written notice is being transmitted as a courtesy to you, and is not intended as an admission that any written notice is otherwise required. The only agreements that exist between Holder and Borrower are those set forth in the Loan Documents, which may only be amended by agreement of the parties in writing.

Please be advised that the delivery of this letter shall not be deemed to constitute a waiver by lender of any of lender's rights or remedies under the Loan Documents. No failure or delay on the part of the lender in exercising any right or remedy shall operate as a waiver of any or such rights or remedies. Nothing contained in this letter is intended to create or constitute, or shall be deemed to be, a waiver, modification, relinquishment or forbearance by either servicer on behalf of lender or by lender of any of lender's rights and remedies under applicable law or the Loan Documents, including without limitation, any and all rights or remedies in connection with any defaults that may now or hereafter exist under the Loan Documents, all of which rights and remedies are hereby expressly reserved.

Sincerely,

Authorized Representative

Access Point Financial, as Lender

**EXHIBIT "T"**



404.382.9599 · accesspointfinancial.com                One Ravinia Drive, 9th Floor | Atlanta, Georgia 30346

April 20, 2021

L N HOSPITALITY CLEVELAND LLC
5300 RIVERSIDE DRIVE
CLEVELAND, OH
44135

RE: Past Due Payment
Asset Number: #7065601

Reference is made to that certain loan in the original principal amount of 5,000,000.00 USD (the "Loan") evidenced by that certain note dated as of 15-Apr-2019 by L N HOSPITALITY CLEVELAND LLC (the Note, together with each other documents and/or instruments evidencing, securing, governing, guarantying or otherwise relating to the Loan, the "Loan Documents").

We are writing to you in our capacity as servicer of the Loan to notify you that your payment due 01-Mar-2021 has not been received or partially satisfied and is now past due. This letter serves as formal notice and demand that Borrower immediately pay any and all sums that remain due and payable under the Loan.

Please forward your payment immediately using one of the methods below:

**WIRING INSTRUCTIONS :**

| | |
|---|---|
| Bank: | Wells Fargo Bank, N.A. |
| | 333 Market Street, 18th Floor |
| | San Francisco, CA 94105 |
| ABA# | ███████ |
| Credit: | Trimont Real Estate Advisors, LLC |
| | Custodial Deposit Clearing Account |
| Account# | ███████ |
| Reference: | #7065601 |

**CHECK PAYMENTS**

Trimont Real Estate Advisors LLC
P.O. BOX 931269
Atlanta, GA 31193-1269



*The Name to Know in* **Hotel Finance**

404.382.9599 · accesspointfinancial.com

One Ravinia Drive, 9th Floor I Atlanta, Georgia 30346

**If you have already sent your payment, please disregard this letter.**

Notwithstanding the acceptance of the Partial Payment or any other partial payments at any time by Holder (or any servicer acting on its behalf), the Loan remains in default. No acceptance by Holder (or any servicer acting on its behalf) of the Partial Payment or any other partial payments shall be deemed or construed as a waiver any defaults described in this letter or otherwise existing under the Loan and/or the Loan Documents. Acceptance of the Partial Payment does not imply that any future partial payments will be accepted by Holder (or any servicer acting on its behalf), and shall not be deemed to be a waiver of Holder's right to reject partial payments, assess late charges, charge a default rate of interest, or to prevent Holder from exercising any right, remedy, or power available to Holder, including, without limitation, all rights, remedies, and powers granted under the Loan Documents and at law or in equity. Further, no failure to exercise or delay in exercising any right, remedy, power or privilege of Holder under the Loan Documents shall operate as a waiver, forbearance or postponement thereof, all of which are hereby expressly reserved.

This written notice is being transmitted as a courtesy to you, and is not intended as an admission that any written notice is otherwise required. The only agreements that exist between Holder and Borrower are those set forth in the Loan Documents, which may only be amended by agreement of the parties in writing.

Please be advised that the delivery of this letter shall not be deemed to constitute a waiver by lender of any of lender's rights or remedies under the Loan Documents. No failure or delay on the part of the lender in exercising any right or remedy shall operate as a waiver of any or such rights or remedies. Nothing contained in this letter is intended to create or constitute, or shall be deemed to be, a waiver, modification, relinquishment or forbearance by either servicer on behalf of lender or by lender of any of lender's rights and remedies under applicable law or the Loan Documents, including without limitation, any and all rights or remedies in connection with any defaults that may now or hereafter exist under the Loan Documents, all of which rights and remedies are hereby expressly reserved.

Sincerely,

Authorized Representative

Access Point Financial, as Lender

**ATLANTA I BUFFALO I BOSTON I NASHVILLE I MINNEAPOLIS I WASHINGTON DC**

**EXHIBIT "U"**

ALEXANDRA C. NELSON
(404) 407-3607
Alexandra.Nelson@ThompsonHine.com

August 30, 2021

*VIA UPS OVERNIGHT DELIVERY*

L N Hospitality Cleveland LLC
5300 Riverside Drive
Cleveland, OH 44135
Attn: Bharathbai Patel, Reg. Agent and
Member/Manager

L N Parking Cleveland LLC
5300 Riverside Drive
Cleveland, OH 44135
Attn: Bharathbai Patel, Reg. Agent and
Member/Manager

Bharathbai Patel
3657 Old Santa Rita Road "C", Suite C
Pleasanton, CA 94588

### NOTICE OF DEFAULT, ACCELERATION, DEMAND FOR PAYMENT, AND RESERVATION OF RIGHTS

Re:     That certain $5,000,000 Pledge Promissory Note dated April 15, 2019 ("<u>Pledge Note</u>"), made by L N Hospitality Cleveland LLC, an Ohio limited liability company ("<u>L N Hospitality</u>") and L N Parking Cleveland LLC, an Ohio limited liability company ("<u>L N Parking</u>", and together with L N Hospitality, collectively, the "<u>Borrowers</u>") in favor of Access Point Financial, LLC, a Delaware limited liability company f/k/a Access Point Financial, Inc., ("<u>Access Point</u>") and the other accompanying loan documents dated of even date therewith, including, (i) that certain Pledge Agreement (the "<u>Pledge Agreement</u>"), executed by Bharathbai Patel, an individual resident of the State of California ("<u>Guarantor</u>"), as the legal and beneficial owner of 100% of Borrowers; (ii) that certain Agreement for Subordination of Payments to Related Parties executed by Borrowers in favor of Access Point (the "<u>Subordination Agreement</u>"); (iii) that certain Agreement Regarding Management executed by and between Access Point and Borrowers (the "<u>Management Agreement</u>"); and (iv) that certain Guaranty Agreement executed by Guarantor in favor of Access Point (the "<u>Guaranty</u>"), pursuant to which Guarantor, *inter alia*, irrevocably, absolutely and unconditionally guaranteed to Access Point all amounts due and owing under the Pledge Note and all other documents evidencing, securing or otherwise related to the loan evidenced by the Pledge Note (collectively, the "<u>Pledge Loan Documents</u>"). Reference is further made to that certain Covid-19 Forbearance Agreement dated as of April 1, 2020 executed by Borrowers and Guarantor in favor of APX – CPX II, LLC, a Delaware limited liability company (as

---

THOMPSON HINE LLP     Two Alliance Center     www.ThompsonHine.com
ATTORNEYS AT LAW     3560 Lenox Road, Suite 1600     Phone: 404.541.2900
    Atlanta, Georgia 30326-4266     Fax: 404.541.2905



**successor by assignment to Access Point with respect to the Loan Documents) (as amended, restated and/or modified, including without limitation by that certain First Amendment to Covid-19 Forbearance Agreement and that certain Second Amendment to Covid-19 Forbearance Agreement, hereinafter the "<u>Forbearance Agreement</u>"). The Pledge Loan Documents, the Forbearance Agreement, and all other agreements, documents, and instruments relating thereto or executed in connection therewith are collectively referred to in this notice as the "<u>Loan Documents</u>." The loan evidenced by the Loan Documents shall be referred to in this notice as the "<u>Loan</u>." Capitalized but undefined terms used herein shall have the meanings given to such terms in the Loan Documents.**

Dear All:

This law firm represents Access Point, as servicer and attorney-in-fact for APX – CPX II, LLC, a Delaware limited liability company ("<u>Lender</u>"). Lender is the current holder of the Loan and related Loan Documents. Notice is hereby given that Borrowers and Guarantor are currently in default under the Loan. Specifically, Borrowers failed to make payments as and when due under the Loan Documents and as required under the Forbearance Agreement. Guarantor has likewise failed to make payments due to Lender under the Loan Documents. This paragraph is not meant to be an exhaustive listing of all of the Borrowers' and Guarantor's defaults (collectively, the "<u>**Events of Default**</u>"), as other undeclared events of default may also exist.

**Due to the Events of Default, Lender hereby exercises its right to declare the entire outstanding principal balance of the Loan, together with all accrued and unpaid interest thereon, and all other sums or payments required thereunder, to be due and payable immediately.**

Lender hereby demands payment in full of all amounts due to Lender under the Loan as of August 25, 2021 as follows, **together with all amounts incurred since that date:**

| | |
|---|---|
| Principal | $ 5,000,000.00 |
| Interest (02/01/2021 – 08/31/2021) | $ 379,777.78 |
| Default Interest (03/01/2021 – 08/25/2021) | $ 123,611.11 |
| Deferred Interest (04/01/2020 – 08/25/2021) | $ 472,029.58 |
| Exit Fee | $ 50,000.00 |
| Late Fees | $ 73,815.81 |
| UCC Fees: | $ 200.00 |
| Payoff Fee: | $ 250.00 |
| Legal Fees (see below): | <To be determined> |
| **Total Amount Due Lender on Loan as of August 25, 2021 (excluding additional legal fees):** | $ 6,099,684.28 |



In addition to Lender's attorney's fees, additional fees and charges incurred by Lender may also become due and payable. Please add $863.37 per day for interest, starting on August 25, 2021.

Payment of these amounts must be made by wire transfer of immediately available funds. Lender's wiring instructions are:

**Wells Fargo Bank, N.A.**
**TriMont Real Estate Advisors, Inc. Clearing Account**
**San Francisco, CA**
**Account #:** ▉▉▉▉▉▉
**ABA#:** ▉▉▉▉▉
**Attention: BALADA REYNOLDS**
**Telephone #: 404-420-5600**
**Reference: Loan 7065601 - L N HOSPITALITY CLEVELAND LLC**

Please be advised that any partial payment or performance of the obligations under the Loan Documents that gave rise to the default(s) identified in this notice shall not (i) constitute an accord, novation, or satisfaction, (ii) cure the subject default, (iii) reinstate the Loan or the Loan Documents, or (iv) waive any rights or remedies of Lender thereunder. Lender continues to reserve and has every intention of pursuing each and every right and remedy available to it. **Pursuant to O.C.G.A. § 13-4-4, you are hereby notified that Lender intends to rely on the exact terms of the Loan Documents notwithstanding any alleged prior departure from the respective terms thereof.**

**Please be advised that Lender also hereby invokes the provisions in the Loan Documents concerning payment by Borrower of attorneys' fees to Lender in addition to any principal and interest and other amounts due Lender. Without limiting any prior notices, pursuant to O.C.G.A. §13-1-11, Borrower, Guarantors, and all other persons obligated under the Loan Documents are hereby advised that they are also responsible for payment of attorneys' fees owing under the Loan Documents. Borrower has ten (10) days after receipt of this notice to cure completely the defaults identified in this notice to avoid incurring the obligation to pay Lender's attorneys' fees as more particularly provided pursuant to O.C.G.A. §13-1-11; provided, however, that this 10-day notice period pertains only to the Borrower's obligation to pay attorneys' fees and does not afford the Borrower additional time to cure an Event of Default or avoid other repercussions of its failure cure an Event of Default.**

In connection with and without limiting any earlier notices and communications, please be advised that under the Loan Documents, Borrower is obligated, among other things, to secure, protect and preserve the collateral, as defined in the Loan Documents, for the Loan (collectively, the "Collateral") and Lender has the right, but not the obligation, to advance any funds necessary to secure, protect and preserve the Collateral. To the extent that Lender has advanced funds or elects to advance funds for the security, protection, or preservation of the Collateral, including any advances previously made, the amount of such advances shall be added to the outstanding principal balance of the Loan and shall be secured by the Loan Documents and in each case such funds may be paid directly to the


security or related venders on Borrower's behalf or to Borrower to be used solely for the protection, security and preservation of the Collateral and no such amount advanced or paid directly (or not advanced or paid) by Lender shall render or be deemed to subject Lender to any liability to Borrower or the Collateral under the Loan Documents or otherwise.

Without limiting the foregoing, nothing in this letter or any prior communications (including, without limitation, the ten (10) day period required by O.C.G.A. §13-1-11) is or shall be deemed to constitute a waiver or election of any rights or remedies available to Lender, or an agreement by Lender to forbear from exercising any rights and remedies available in law or in equity to Lender, under the applicable Loan Documents, all of which rights and remedies are expressly reserved it being the specific intention of Lender to take such actions and exercise any and all rights and remedies which Lender may deem necessary to protect its interests notwithstanding any current or future departure. Nothing contained in this letter or prior communications or actions (including actions or advances to inspect or secure the covenants, obligations or agreements of Borrower) establish any course of dealing or obligations among Lender and the Borrower and/or any Guarantor that is inconsistent with the express terms of the Loan Documents or render or in any way be deemed to render Lender a mortgagee in possession of the secured property.

Please be advised that Lender may at any time and without further notice to you or any other party exercise any and all remedies available to it under the Loan Documents, all as set forth therein, or as may be provided by applicable law, including without limitation, the right to initiate foreclosure proceedings and/or bring suit against Borrower or one or more of the Guarantors to collect the entire unpaid balance of the Loan and any other amounts provided in the Loan Documents.

This law firm demands to collect the debt described herein and any information obtained will be used for that purpose. Should you have any questions about anything in this letter, please contact me directly.

Respectfully

THOMPSON HINE LLP

*Alex Nelson*

Alexandra C. Nelson

ACN
cc:     Access Point Financial, LLC

**THIS LAW FIRM IS ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION WILL BE USED FOR THAT PURPOSE**